IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

REGINALD D. LOCKHART,

   Plaintiff,

v.

ERIC PETTY, Individually,
KENNETH WILCOX, Individually, and the
CITY OF LITTLE ROCK, a Municipality,

   Defendants.

Case No.: 4:24-cv-143-JM

***JURY TRIAL DEMANDED**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB 16 2024

TAMMY H. DOWNS, CLERK
By: _____ DEP CLERK

# COMPLAINT

NOW COMES Plaintiff, REGINALD D. LOCKHART (hereafter "PLAINTIFF"), by and through his attorneys, LAUX LAW GROUP, and for his cause of action against Defendants, ERIC PETTY, Individually, KENNETH WILCOX, Individually, and the CITY OF LITTLE ROCK, a Municipality (hereafter collectively "DEFENDANTS"), states as follows:

## INTRODUCTION

This is a civil action for declaratory, injunctive and monetary relief brought by PLAINTIFF against ERIC PETTY (hereafter "PETTY"), KENNETH WILCOX (hereafter "WILCOX") and his employer, CITY OF LITTLE ROCK (hereafter "CITY"), alleging as more specifically set forth below: a) that PLAINTIFF was subject to discrimination in pay because similarly situated white employees with lesser qualifications were systematically over a period of years compensated at a rate higher than PLAINTIFF; b) that PLAINTIFF was denied promotions given to lesser qualified white applicants; and c) that PLAINTIFF was subject to retaliation for the filing of a previous charge of discrimination with the Equal Employment Opportunity Commission (EEOC), and other protected activities.

This case assigned to District Judge  Moody
and to Magistrate Judge  Ervin

DEFENDANTS' conduct, as described herein, was in violation of Title VII of the Civil Rights Act of 1964, specifically, 42 U.S.C. Section 2000e-5, *et. seq.*, (hereafter "Title VII"), the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution which forbids racial discrimination by governmental actors and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et. seq.* which protects Arkansas citizens from deprivation of the equal protection of law guaranteed them under the Arkansas state constitution.

This action is re-filed, with the current pleading, pursuant to the Arkansas "savings statute," Ark. Code Ann. § 16-56-126. This action was previously filed in federal court in the Eastern District of Arkansas, as *Lockhart v. Petty, et al.,* Case No. 4:20-CV-384-JM.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(3) and (4) and Title VII which creates a private cause of action for unlawful discrimination on the basis of race, and 42 U.S.C. § 1983 which creates a private cause of action to redress violations of rights guaranteed by the U.S. Constitution. The ancillary jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1367 to adjudicate claims arising under the Constitution and laws of the State of Arkansas.

2. On September 25, 2019, PLAINTIFF filed Charge of Discrimination No. 493-2019-02070 with the EEOC. On January 8, 2020, PLAINTIFF received his right to sue letter. See EEOC Dismissal and Notice of Rights Letter, attached hereto as <u>Exhibit A</u>. All conditions precedent to the filing of this action under Title VII have been satisfied with regard to PLAINTIFF's claims that he was discriminated against in the terms and conditions of his employment on the basis of race.

3. Venue of this Court is proper pursuant to 28 U.S.C. § 1391(c) in that all the acts and conduct complaint of herein and all claims raised herein arose within the corporate boundaries of the City of Little Rock, Pulaski County, Arkansas, encompassed within the Western Division of the Eastern District of Arkansas.

PARTIES

4. PLAINTIFF is a black male citizen of the United States residing in the City of Little Rock, County of Pulaski, Arkansas. PLAINTIFF is a long time employee of the Streets Division (hereafter "Streets Division") of the CITY's Department of Public Works with a long history of good performance evaluations.

5. The CITY is a political subdivision of the State of Arkansas duly created and acting pursuant to the laws of the State of Arkansas. At all times pertinent hereto the CITY was an "employer" within the meaning of Title VII. All of the acts and conduct of the CITY, PETTY and WILCOX and other CITY employees complained of herein constitute "state action" within the meaning of Section 1983.

6. PETTY is a white male citizen of the United States Residing in the City of Little Rock, Arkansas. At all times pertinent hereto he served as the Manager of the CITY's Streets Division. As such PETTY was and is charged with the responsibility of making hiring promotion decisions and making employee evaluations which govern pay increases. PETTY has both the apparent and actual authority to make all pay and promotion decisions in the Streets Division and has the responsibility to protect the rights of minority employees from unlawful discrimination on the basis of race.

7. WILCOX is a white male citizen of the United States residing in the City of Little Rock, Arkansas. At all times pertinent hereto, WILCOX served as the Superintendent of Streets

in the CITY's Streets Division. As such WILCOX was and is charged with the responsibility of making hiring promotion decisions and making employee evaluations which govern pay increases. WILCOX has both the apparent and actual authority to make all pay and promotion decisions in the Streets Division and has the responsibility to protect the rights of minority employees from unlawful discrimination on the basis of race.

## FACTUAL BACKGROUND

8. The CITY's Streets Division has a long history of discrimination on the basis of race in its first-line workforce, especially affecting those employees filling Operator I, II, III, IV and V positions. Historically, black employees have on average made less in salary than similarly situated white employees.

9. In addition, the Supervisor I and Supervisor II positions have been overwhelmingly filled by white applicants despite a sizable pool of qualified black applicants. Consistently in the past, as of the date of filing of his EEOC charge and currently, PLAINTIFF was and is paid less than similarly situated white employees of the CITY.

10. Between 2013 and 2019, PLAINTIFF began to complain that blacks employed by the CITY in the Department of Public Works were paid less and denied promotions unfairly in favor of white applicants.

11. In 2018, PLAINTIFF filed a grievance, alleging racial discrimination in the inaccurate assessment of employee seniority in the application process and other policy deviations committed by the CITY. PLAINTIFF's grievance was dismissed, and he appealed. His appeal was denied by the CITY via then-city manager, Bruce Moore.

12. As a result of engaging in this protected activity—making a claim of racial discrimination against the CITY—PLAINTIFF became a target of retaliation for the CITY, PETTY and particularly his supervisor, WILCOX.

13. In April 2019, CITY employee, Jim Carloss, retired and the position he held, "Supervisor I-heavy equipment," became open. At this time, WILCOX assigned Norman Stanley, who was a "Supervisor I-concrete" to also perform the duties of the Supervisor I-heavy equipment position until the CITY's filled the position permanently. The CITY then advertised the application process for the open Supervisor I-heavy equipment position.

14. Based on his seniority and relevant work experience, PLAINTIFF was the most qualified applicant for the Supervisor I-heavy equipment position. PLAINTIFF submitted a detailed application for the Supervisor I-heavy equipment position that included a letter of recommendation from a respected Department of Public Works supervisor.

15. In April 2019, CITY employee Kevin Page, a white male, had less experience in streets/storm and drain maintenance than PLAINTIFF. In April 2019, CITY employee, Dale Lester, a white male, had less seniority in the Streets Division than PLAINTIFF. Page and Lester applied for the open Supervisor I-heavy equipment position.

16. When WILCOX looked through the list of applicants for the Supervisor I-heavy equipment position and learned that PLAINTIFF was among the applicants, he understood that PLAINTIFF had the most seniority and relevant work experience for the position.

17. At this time, WILCOX decided he would make Norman Stanley the permanent Supervisor I-heavy equipment and have the Supervisor I-heavy equipment applicants compete for the now-open Supervisor I-concrete position vacated by Norman Stanley.

18. WILCOX then enlisted PETTY to help him assemble an interview panel which would go along with WILCOX's plan to box PLAINTIFF out of a supervisory position in Public Works. As part of his plan, WILCOX would seek to place Lester in the open supervisory position instead of PLAINTIFF.

19. With WILCOX's biased interview panel and the changed supervisory criteria, Lester and Page both scored high points but WILCOX's panel scored Lester highest. As planned by WILCOX, Lester was offered the supervisory position vacated by Norman Stanley. However, Lester declined.

20. WILCOX then awarded Page the supervisory position vacated by Norman Stanley, and Page became a Supervisor I. WILCOX then gave Lester a modified Supervisor I position.

21. By changing the supervisory criteria in the original posting, WILCOX and others nullified PLAINTIFF's relevant experience and bolstered his competitors, Lester and Page, both white males.

22. On May 10, 2019, PLAINTIFF complained to the CITY's human resources department about WILCOX's panel and how WILCOX, PETTY and others manipulated the process, boxing him out of the position for which he was most qualified by changing the supervisory criteria. On May 15, 2019, PLAINTIFF formally appealed his non-selection for the Supervisor I position. WILCOX told PLAINTIFF he was not selected due to a lack of experience and seniority.

23. Starting around June 11, 2019, PLAINTIFF circulated a petition regarding racial discrimination in the workplace, amassing dozens of signatures of CITY employees who claimed to have experienced discrimination while employed by the CITY. PLAINTIFF's petition angered

WILCOX, who publicly conveyed that PLAINTIFF would never advance to a supervisory position as a result.

24. On June 13, 2019, PLAINTIFF filed an official grievance regarding the denial of his promotion, alleging racial discrimination and retaliation. The grievance was dismissed, and PLAINTIFF appealed.

25. In a June 21, 2019 letter, the CITY denied PLAINTIFF's appeal. See June 21, 2019 Denial Letter, attached hereto as Exhibit B. Mr. Moore did not address in his June 21 denial letter PLAINTIFF's most significant charge: that WILCOX and PETTY changed the Supervisor I-heavy equipment criteria at the 11th hour because they knew it was the best way to prevent PLAINTIFF's promotion.

26. Additionally, there are several false statements contained in the CITY's June 21 denial letter. Primary among them regards Mr. Moore's defense of WILCOX's decision to promote Lester over PLAINTIFF. In the letter Mr. Moore told PLAINTIFF that Lester's promotion to the Supervisor I position was legitimate because Lester had more seniority (37 years) than did PLAINTIFF (12 years). See Ex. B at pp. 1-2.

27. This is false because, in April 2008, Lester resigned from the CITY a few days before he was convicted of Second Degree Sexual Assault, a felony. See Dale Lester Mugshot/Felony Disposition Sheet, attached hereto as Exhibit C. After his release from prison, Lester was re-hired by the CITY on September 3, 2012, more than three (3) years after his resignation.

28. According to the CITY's Administrative Personnel Policy and Procedure Manual, when a former CITY employee, like Lester, gains employment with the CITY after more than one

(1) calendar year of absence, he "shall be considered a new applicant" and his "most recent date of employment shall be used "[f]or purposes of establishing…seniority…"

29. Therefore, in April 2019, PLAINTIFF (12 years) had more seniority than Lester (less than 7 years), making Mr. Moore's June 21, 2019 statement to PLAINTIFF stating the contrary a false statement.

30. WILCOX blocked the promotion of PLAINTIFF, a black man employed by the CITY full time since 2007, in favor of a white man, Lester, who is a convicted felon and registered sex offender with less seniority than PLAINTIFF.

31. WILCOX continued his retaliation campaign against PLAINTIFF for years, successfully and repeatedly preventing PLAINTIFF from being promoted within the CITY's Streets Division.

32. For instance, from April 2019 through July 2020, PLAINTIFF applied for five (5) supervisory positions within the Streets Division, and each time he encountered biased hiring panels assembled and headed by WILCOX.

33. Each time, PLAINTIFF was denied the sought-after promotion by biased interview panels assembled and headed by WILCOX. See Chart No. 1 below.

| Date | 3/18/21 | 7/9/20 | 5/18/20 | 11/21/19 | 9/26/19 | 4/30/19 |
|---|---|---|---|---|---|---|
| Position | Supervisor I | Street repair specialist | Supervisor I | Street repair specialist | Supervisor II | Supervisor I- heavy equipmt |
| PLAINTIFF ranking | 1 out of 6 | 2 out of 6 (tie) | 3 out of 6 | 6 out of 10 (tie) | 3 out of 3 | 7 out of 11 (tie) |
| Top scorer per panel | Reggie Lockhart | Brian Grant | Michael Burress | Kizma Williams | Lee Church | Dale Lester |
| Panel members | Kevin Page Monica Craft Michael Burress | WILCOX Wanda Sullivan Kizma Williams | WILCOX Kizma Williams Johnnie Dorn | WILCOX Johnnie Dorn Melissa Allen | WILCOX Melissa Allen Roosevelt Lewis | WILCOX Darrell Romes Calvin Johnson Melissa Allen |

Chart No. 1—Streets Division supervisory positions for which PLAINTIFF applied April 2019-March 2021.

8

34. In March 2021, PLAINTIFF applied for another Supervisor I position and, this time, WILCOX was unable to sit on PLAINTIFF's hiring panel. Without WILCOX's impermissible motives and undue influence, PLAINTIFF was finally promoted to Supervisor I by an unbiased panel. See Chart No. 1 above.

## PLAINTIFF'S CAUSES OF ACTION

35. PLAINTIFF has suffered racial discrimination and workplace retaliation caused by DEFENDANTS for years, and the unconstitutional conduct still continues. Moreover, the acts, omissions and conduct complained of herein were part of a pattern or practice of similar behavior and/or pursuant to a policy tacitly endorsed and authorized by the CITY, particularly the Department of Public Works and/or Streets Division.

36. As a result of DEFENDANTS' acts, omissions and conduct complained of above, PLAINTIFF suffered actual and compensatory damages, including out-of-pocket expenses, significant loss of pay and benefits, loss of economic opportunity, as well as severe emotional distress, humiliation and pain and suffering. PLAINTIFF's damages claim is evidenced by his EAP referral for stress related problems due to the discrimination and workplace retaliation as described herein.

37. The acts, omissions and conduct of PETTY and WILCOX complained of above were also willful and malicious, specifically designed to deprive PLAINTIFF of rights guaranteed him under Title VII, the U.S. Constitution and Arkansas' Civil Rights Act.

38. PLAINTIFF incorporates Paragraph Nos. 1 through 37, above, as though specifically set forth word-for-word, and sets forth his causes of action.

## PRAYER AND REQUEST FOR RELIEF

WHEREFORE, in consideration of the foregoing, PLAINTIFF prays the Clerk to set this matter for trial by Jury and, upon a hearing and verdict thereon, respectfully requests this Court to issue a Judgment:

a) declaring that the CITY, by and through the acts and conduct of PETTY, WILCOX and others, did discriminate against PLAINTIFF in the area of pay and promotions on the basis of race in violation of Title VII, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and the Arkansas Civil Rights Act;

b) declaring that PETTY did discriminate against PLAINTIFF in the area of pay and promotions on the basis of race in Title VII, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and the Arkansas Civil Rights Act;

c) declaring that WILCOX did discriminate against PLAINTIFF in the area of pay and promotions on the basis of race in Title VII, the Equal Protection Clause of the Fourteenth Amendment to the U. S. Constitution and the Arkansas Civil Rights Act;

d) that DEFENDANTS did retaliate against PLAINTIFF for his filing of a previous charge of discrimination with the EEOC and other protected activities in violation of Title VII;

e) that the acts and conduct of PETTY and WILCOX were willful and malicious and taken with the express purpose of discriminating against PLAINTIFF on the basis of race and of depriving PLAINTIFF of rights guaranteed him under the U.S. Constitution and the Arkansas state constitution;

f) ordering that PLAINTIFF be promoted to the position of Supervisor II or commensurate position as of the date that position was filled with all back pay and benefits due and owing;

g) awarding PLAINTIFF actual and compensatory damages in an amount to be established at trial;

h) awarding PLAINTIFF punitive damages against PETTY and WILCOX; and

i) awarding PLAINTIFF his costs incurred in bringing this action, including a reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

        Respectfully submitted,

        */s/ Michael J. Laux*
        Michael J. Laux
        E. Dist. Arkansas Bar No. 6278834
        One of the Attorneys for PLAINTIFF
        LAUX LAW GROUP
        400 W. Capitol Avenue, Suite 1700
        Little Rock, Arkansas 72201
        Telephone: (501) 242-0750
        Facsimile: (501) 372-3482
        E-mail: mlaux@lauxlawgroup.com
                mikelaux@icloud.com

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Reginald D. Lockhart**<br>9 Wimbledon Green Circle #914<br>Little Rock, AR 72210 | From: **Little Rock Area Office**<br>820 Louisiana<br>Suite 200<br>Little Rock, AR 72201 |

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 493-2019-02070 | **Margie Myers,** Investigator | (501) 324-6214 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

JAN 0 8 2020

Enclosures(s)

**William A. Cash, Jr.,**
**Area Office Director**

(Date Mailed)

cc: **Dr. Shella Atlas Evans**
**Labor & Employee Relations Manager**
**CITY OF LITTLE ROCK HUMAN RESOURCES DEPARTMENT**
500 W. Markham Ste. B18
Little Rock, AR 72201

# Exhibit A

**City of Little Rock**

Bruce T. Moore
City Manager

City Hall, Room 203
500 W. Markham
Little Rock, Arkansas 72201-1427
Phone: (501) 371-4510
Fax: (501) 371-4498
www.littlerock.gov
citymanager@littlerock.gov

June 21, 2019

Mr. Reginald Lockhart
5307 Holly Springs Boulevard
Little Rock, AR  72206-4907

re:  AFSCME Appeal of Promotion and Grievance

Dear Mr. Lockhart:

Recently you filed an appeal with the Human Resources Department-Labor & Employee Relations Division regarding your non-selection for the position of Supervisor I. During your meeting with the Labor & Employee Relations Manager, you made allegations that you were denied a promotion to Supervisor because of your race (Black); that you were subjected to a hostile work environment; and that you were retaliated against for filing previous complaints, appeals and grievances. In the appeal, you alleged that you were more senior and qualified than the candidate selected, and that nepotism played a factor in the selection process, due to the fact Kenny Wilcox had a friendship with Dale Lester and Kevin Page outside of work. In addition, you alleged that you were approached by a Supervisor asking what equipment was needed to complete a job. You further alleged that Kenny Wilcox and Calvin Johnson changed the job description to fit the person's qualifications that they ultimately selected for the job.

Our records show that an Interview Panel was selected and received the final approval by Public Works Directors Jon Honeywell (Caucasian Male) for the position of Supervisor I. The Interview Panel comprised of the following individuals:

Kenny Wilcox, Street Maintenance Superintendent (Caucasian Male)
Calvin Johnson, Assistant Street Superintendent (Caucasian Male)
Darrell Romes, Supervisor I (African-American Male)
Melissa Allen, Scheduler-Controller (African-American Female)

Each person on the Interview Panel ranked all of the applicants and the applicants with the best scores were offered the Supervisor I's position. Specifically, Dale Lester (Caucasian Male) ranked number one (1) and Kevin Page (Caucasian Male) was second in the rankings. Mr. Lester was offered the position; however,

**Exhibit B**

he changed his mind and declined the position and as a result, Mr. Page was offered and accepted the position of Supervisor I. In addition, John Ball (Caucasian Male) ranked number three (3) and Ricky Davis (African-American Male) ranked number four (4). Out of twelve (12) candidates, you were eighth in the ranking.

The record shows that you have worked for the City for approximately twelve (12) years; whereas, Mr. Lester has worked for the City for thirty-seven (37) years and Mr. Page has worked for the City for twenty-six (26) years. In addition, Mr. Page was already employed in the capacity of Supervisor I for the Parks & Recreation Department; therefore, this was a lateral transfer for Mr. Page. Mr. Page worked as a Supervisor I for six (6) years and prior to his reclassification to Supervisor I, he worked as a Parks Maintenance and Development Foreman for twenty (20) years. Therefore, all of Mr. Page's experience is supervisory related and he met the qualifications for the Supervisor I, Street and Drain Maintenance position. Records indicate that Mr. Page has more City seniority than you. In addition, the records do not show where you have worked as a Supervisor or have supervisory experience.

"The City's obligation is to provide equal treatment for all persons in the terms and conditions of employment" (The City's Nepotism Policy). The City's Nepotism Policy states, "No employee shall be hired, transferred, promoted, demoted or otherwise placed into a position under the immediate supervision of a relative. The term "relative" shall mean all persons related by blood, marriage, legal adoptions and/or guardianships" (The City's Administrative Personnel Policy and Procedure Manual: e. Nepotism (i) p. I-5.2). According to the City's Nepotism Police, there is no evidence that a nepotism relationship exists between Kenny Wilcox and Dale Lester or Kenney Wilcox and Kevin Page.

In your appeal, you alleged that Normal Stanley, Supervisor I (Caucasian Male), asked you what type of equipment was needed to complete a job. Testimony indicated that Public Works Operation Supervisors will ask Equipment Operators what type of equipment they would like to use for projects and then he Supervisors are tasked with obtaining the equipment, which may include renting equipment or scheduling the use of available City Equipment based on work orders. Therefore, there is nothing wrong with a Supervisor asking the Equipment Operators which equipment they want to complete work orders as they may prefer to use different equipment, such as a *backhoe, trackhoe, mini-excavator, or gradeall.*

The allegations of you being discriminated against because of your race (Black), being subjected to a hostile work environment and being retaliated against for filing previous complaints, appeals/grievances are being processed by the Human Resources Department-Labor & Employee Relations Division as an Equal Employment Opportunity (EEO) Discrimination Complaint, which is currently being investigated.

While I do understand the disappointment in not being selected for this positon, I do not believe that anything improper occurred and under the AFSCME Statement of Agreement, Article VIII, Promotions and Transfers Section 2 (b). Therefore, your Appeal is denied for the reasons outlined above.

Sincerely,

Bruce T. Moore,
City Manager


cc:   Jon Honeywell, Public Works Director
      Stacey Witherell, Human Resources Director

| | |
|---|---|
| **Name:** | DALE EARL LESTER |
| **AKA:** | LESTER, DALE, EARL |
| **Level:** | 2 |

**Physical Description**

| | | | |
|---|---|---|---|
| Age: | (DOB: 1950-03-27) | | |
| Sex: | M | | |
| Race: | W | Eyes: | Brown |
| Hair: | Brown | | |
| Scars/Tattoos: | | | |

**Address**

7900 BLOCK OF EVENING SHADE DR MABELVALE, AR 72103 (Show On Map)

**Offenses**

SEXUAL ASSAULT - 2ND DEGREE

**Details**

**Drivers License State / Number**

AR / 911124330

If you have residential information different that what is shown, please contact us at pstitz@acic.arkansas.gov.

# 43CR-09-25: STATE V DALE EARL LESTER

## Offenses

Expand All   Collapse All

- Case Summary
- Case Participants
- Case Events
- **Offenses**
- Sentences
- Milestone Tracks
- Docket Entries

| | Offense | Plea | Disposition | |
|---|---|---|---|---|
| 2 | SEXUAL ASSAULT-2ND DEGREE<br>12/13/2008 | GUILTY<br>04/26/2009 | GUILTY<br>04/26/2009 | ⌄ |

## Sentences

Expand All   Collapse All

| Name | Sentence | Length | Suspended Length | Served | |
|---|---|---|---|---|---|
| LESTER, DALE EARL | IMPOSED (CONVERSION) | 240 Month(s) | None | None | ⌄ |

Exhibit C