**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**REGINALD D. LOCKHART**                                              **PLAINTIFF**

**VS.**                          **CASE NO. 4:24-CV-00143-JM**

**ERIC PETTY, Individually;**
**KENNETH WILCOX Individually; and**
**CITY OF LITTLE ROCK, a municipality**                      **DEFENDANTS**

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff, Reginald Lockhart, is suing Defendants Eric Petty and Kenneth Wilcox, in their individual capacities, and the City of Little Rock. Plaintiff is suing Defendants under 42 U.S.C. § 1983 based on alleged violations of the Equal Protection Clause of the U.S. Constitution, Title VII of the Civil Rights Act of 1964, and the Arkansas Civil Rights Act ("ACRA").

Plaintiff filed his original complaint on April 7, 2020 (Case No. 4:20-cv-00384-JM). In the original complaint, Plaintiff claimed: (1) that he was the subject of discrimination in pay based on an allegation that similarly situated and lesser qualified white employees were systematically paid more than Plaintiff over a period of several years; (2) that Plaintiff was denied promotions given to lesser qualified white applicants; and (3) that Plaintiff was subject to discrimination in pay and promotions in retaliation for filing a previous charge of discrimination with the EEOC. Plaintiff voluntarily non-suited the case on February 23, 2023.

Plaintiff subsequently filed a complaint on February 16, 2024, once again alleging racial discrimination in pay and promotions, as well as retaliation. Plaintiff is alleging racial discrimination related to (1) his pay, and (2) denial of five promotions for which he applied.

## II. FACTUAL BACKGROUND

Plaintiff alleges that he failed to receive promotions five separate times because of discrimination based on his race: April 30, 2019 ("Promotion One"); September 26, 2019 ("Promotion Two"); November 21, 2019 ("Promotion Three"); May 18, 2020 ("Promotion Four"), and July 9, 2020 ("Promotion 5").

Reginald D. Lockhart ("Plaintiff") became employed with the City of Little Rock, Arkansas ("the City") in 2007 after being recruited by Kenneth Wilcox. **Ex. 41, PP. 14, 17; Ex. 3 ¶5.** From 2007 to 2012, Plaintiff held various positions with the City including Crew Leader, Equipment Operator IV, and Equipment Operator V.

Plaintiff was promoted to Equipment Operator IV on June 4, 2012, after being interviewed by Kenneth Wilcox. **Ex. 41, PP. 22; Ex. 49.** He was subsequently promoted to Equipment Operator V on April 20, 2015, while Kenneth Wilcox was the Street Superintendent and Eric Petty was the Operations Manager. **Ex. 40, PP 36; Ex. 3 ¶7; Ex. 4 ¶8.** Lockhart subsequently applied for the Street Repair Specialist position, but was not selected.

The Operations Division of Public Works is split into four sub-sections; Administration; Streets and Drainage Maintenance; Control Devices; and Scheduling. There are six (6) Supervisor I in the Streets Division, all of whom have the same title, job description, duties, and responsibilities, but primarily supervise a certain activity and crew. However, all Supervisor I in the Streets Division routinely fill in for each other and supervise crews in all areas of the Streets Division, if the needs of the department require. **Ex. 9 ¶ 9; Ex. 3 ¶ 13; Ex. 14 ¶ 7; Ex. 7 ¶ 8; Ex. 15 ¶ 24.**

In 2018, Reginald Lockhart filed a HR grievance alleging the terms of his AFSCME Statement of Agreement were violated when he was not promoted to the position of Street Repair Specialist. On August 24, 2018, City Manager Bruce Moore wrote a letter denying the appeal of the non-

promotion citing no evidence of a violation of the AFSCME Statement of Agreement. **Ex. 36; Ex. 40, PP. 50 - 54**.

In 2019, Lockhart applied for the position of Supervisor I. The job posting created by Human Resources advertised the position as Supervisor I (Streets and Drainage Maintenance). It was not posted or advertised as Supervisor I (Heavy Equipment). **Ex. 50**; **Ex. 42.**  As part of the Operations Division's interview process, the hiring manager or division supervisor would recommend a panel of three or four people to the Division Manager (Eric Petty), who would then ask for approval from the Department Director (Jon Honeywell). The panels consisted of at least two African-American panelists and at least one female panelist. The vast majority of interview panels were majority African-American. **Ex. 3 ¶*16-17*; Ex. 4 ¶*12*; Ex. 5 ¶*8*; Ex. 12 ¶*8.***

After an interview panel was selected and times were set up for interviews, the panelists would review applications and the job descriptions provided by Human Resources. The interview panelists would ask questions related to the job descriptions to the applicants interviewing. After the interviews concluded, the panelists would individually rank the applicants from 1st to last. The rankings were added together to get a final score for each applicant. The applicant with the best score would be offered the position. **Ex. 3 ¶*19-20*; Ex. 4 ¶*13*; Ex. 12 ¶*7-9*.** Eric Petty and the Operations Division always interviewed internal applicants that met minimum qualifications. **Ex. 4 ¶*11*.**

 On or about April 29, 2019, Reginald Lockhart interviewed for the position of Supervisor I (Streets and Drainage Maintenance). **Ex. 3 ¶*16*; Ex. 8 ¶*5*; Ex. 15 ¶*8*; Ex. 1; Ex. 2**. The interview panel for the April 29, 2019, Supervisor I (Streets and Drainage Maintenance) position were Kenneth Wilcox, a white male, Calvin Johnson, a white male, Darrell Romes, an African-American male, and Melissa Allen, an African-American female. During the April 29, 2019, interviews, the

interview panelists followed the established process for conducting interviews within the Operations Division, including the Streets Division. **Ex. 8 ¶5; Ex. 3 ¶16; Ex. 15 ¶10-16**.

The interview panel ranked Dale Lester first, Kevin Page second, John Ball third, and Reginald Lockhart was tied for seventh with Michael Burress, but because Reginald Lockhart and Michael Burress were tied and Michael Burress had more seniority than Mr. Lockhart, Mr. Lockhart would have been the eighth choice for the position. **Ex. 40, PP. 130; Ex. 16; Ex. 4 ¶ 13.**

Because Dale Lester, a white male, was the best-scoring applicant, he was offered the position. However, he turned the position down, as Kenneth Wilcox would not guarantee him he would be the supervisor over the heavy equipment crews. **Ex. 3 ¶20; Ex. 7 ¶6; Ex. 40, PP. 96, 123**. Kevin Page, a white male, was the second highest scoring applicant, and was then offered the position. He accepted and became Supervisor I with the primary assignment of supervising the concrete crews. **Ex. 3  ¶20; Ex. 7 ¶6; Ex. 40, PP. 96, 123**.

In April of 2019, Dale Lester had thirty-four (34) total years of experience in the Streets Division of Public Works, mostly as an equipment operator. **Ex. 3 ¶19; Ex. 55; Ex. 6 ¶8; Ex. 25,; Ex. 8; Ex. 15 ¶17**. He also had nine (9) years of experience as a Supervisor I for the Streets Division (formerly known as Foreman I). **Ex. 54; Ex. 3 ¶19; Ex. 15 ¶17; Ex. 6 ¶12; Ex. 8 ¶8**, and one (1) year of experience as the Assistant Street Superintendent (formerly known as Foreman III). **Ex. 54; Ex. 3 ¶19; Ex. 15 ¶17; Ex. 6 ¶12; Ex. 8 ¶8.**

In April of 2019, Kevin Page had twenty-six (26) total years of experience as an employee of the City of Little Rock. **Ex. 7 ¶2-3; Ex. 37; Ex. 38; Ex. 49; Ex. 3 ¶19; Ex. 8 ¶9; Ex. 15 ¶18**. This includes over twenty (20) years of experience as a Supervisor I, Assistant Superintendent, and Interim Superintendent in the Parks and Recreation Department with the City of Little Rock. **Ex. 7 ¶3; Ex. 37; Ex. 38; Ex. 49; Ex. 3 ¶19; Ex. 8 ¶9; Ex. 15 ¶18**. Both Dale Lester and Kevin Page had

substantially more supervisory experience than Reginald Lockhart as of April 2019. **Ex. 3 ¶*19-20*; Ex. 8 ¶*8-9*; Ex. 15 ¶*17-18*.** As of April 2019, Dale Lester and Kevin Page were objectively more qualified than Reginald Lockhart for the Supervisor I (Streets) position. **Ex. 3 ¶*19*; Ex. 8 ¶*8-9*; Ex. 15 ¶*17-18*.**

On September 25, 2019, Plaintiff filed an EEOC Complaint alleging he was paid less than similarly situated white Equipment Operator Vs, that he received a lower raise than similarly situated white employees, and that he was denied a promotion from Equipment Operator V to Supervisor I around May 10, 2019. The specified time range for the alleged discriminatory action was listed as May 10, 2019, to July 30, 2019. The box for "continuing action was not selected." **Ex. 48, *EEOC Complaint*.**

Plaintiff filed a Complaint in this Court on April 7, 2020, *Case No. 4:20-cv-384-JM*, alleging (a) that lesser qualified white employees were paid more than him over the period of several years; (b) that he was discriminated against on the basis of race when a lesser qualified white employee was selected over him for a Supervisor I position; and (3) that the pay disparities and non-promotion were in retaliation for Plaintiff filing a previous EEOC Complaint. **Ex. 1**. The action was non-suited on February 23, 2023.

On or about March 18, 2021, Reginald Lockhart interviewed for the Supervisor I (Streets) position and received the promotion after a panel unanimously ranked him the best applicant that interviewed for the position. **Ex. 21; Ex. 40, PP. 100.** Nevertheless, on February 16, 2024, Lockhart filed his complaint herein reasserting the allegations made in *Case No. 4:20-cv-384-JM.*

**Table 1: Positions for which Plaintiff applied between April 2019 and March 2021.**

| Interview Date | 3/18/21 | 7/9/20 "Promotion 5" | 5/18/20 "Promotion 4" | 11/21/19 "Promotion 3" | 9/26/19 "Promotion 2" | 4/30/19 "Promotion 1" |
|---|---|---|---|---|---|---|
| Position | Supervisor I | Street Repair Specialist | Supervisor I | Street Repair Specialist | Supervisor II (Control Devices) | Supervisor I (Streets) |
| Top scorer per panel | **Plaintiff Reginald Lockhart** (black male) | **Brian Grant** (black male) | **Michael Burress** (black male) | **Kizma Williams** (black female) | **Lee Church** (white male) | **Dale Lester\*** (white male) <br><br> *Lester declined the position, which was then given to second highest scorer, **Kevin Page** (white male) |
| Panel Members | **Kevin Page** (white male) --- **Monica Crayton** (black female) --- **Michael Burress** (black male) | **Kenneth Wilcox** (white male) --- **Wanda Sullivan** (black female) --- **Kizma Williams** (black female) | **Kenneth Wilcox** (white male) --- **Kizma Williams** (black female) --- **Johnnie Dorn** (black male) | **Kenneth Wilcox** (white male) --- **Johnnie Dorn** (black male) --- **Melissa Allen** (black female) | **Mark Jacobi** (white male) --- **Melissa Allen** (black female) --- **Rosevelt Lewis** (black male) | **Kenneth Wilcox** (white male) --- **Darrell Romes** (black male) --- **Calvin Johnson** (white male) --- **Melissa Allen** (black female) |

## III. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

Summary Judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. Pro. R. 56

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson*

*v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). All reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). However, "the plaintiff is not relieved of his own burden of producing in turn, affirmative evidence that would support a jury verdict in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct 2505, 91 L.Ed.2d 202 (1986). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Torgerson v. City of Rocester,* 643 F.33d 1031, 1043 (8th Cir. 2011) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct 2548 (quoting Fed. R. Civ. P. 1)).

## IV. ARGUMENT

### A. Plaintiff's Title VII Claims are barred.

Plaintiff's claims under Title VII should be dismissed because the Arkansas savings statute does not revive those claims from his first complaint in Case No. 4:20-cv-384-JM, and even if the Arkansas savings statute revived claims pursued under Title VII, Plaintiff failed to include Promotions Two, Three, Four, and Five in his original complaint, and savings statutes cannot revive claims that were not originally pleaded. Additionally, Plaintiff's claims under Title VII should be dismissed for failure to exhaust administrative remedies in relation to Promotions Two, Three, Four, and Five. Those claims are barred by the statute of limitations because he never filed an EEOC

claim on those individual occurrences. Furthermore, Plaintiff cannot show any evidence that he was retaliated against or discriminated against on any occasion complained of on the basis of his race.

Plaintiff's Title VII claims against Petty and Wilcox should be dismissed in whole because there is no individual supervisor liability under Title VII. *See Spencer v. Ripley County State Bank*, 123 F.3d 690, 691–92 (8th Cir. 1997).

**1. The Arkansas Savings Statute does not revive Plaintiff's Title VII claims.**

Plaintiff filed his first complaint alleging discrimination on April 7, 2020 (Case No. 4:20-cv-384-JM). Plaintiff subsequently non-suited his case on February 23, 2023. Plaintiff then re-filed this case on February 16, 2024. The actions complained of by Plaintiff occurred, at the latest, on July 9, 2020. Because the Arkansas savings statue does not preserve Title VII claims after a nonsuit, all of Plaintiff's Title VII claims should be dismissed due to the federal statute of limitations for Title VII cases.

The Arkansas savings statute provides in relevant part that "if any action is commenced within the time prescribed . . . and the plaintiff therein suffers a nonsuit . . . the plaintiff may commence a new action within (1) one year after the nonsuit suffered." Ark. Code Ann. § 16–56–126. The Eighth Circuit is clear that Title VII claims are not preserved by a state savings statute after a voluntary nonsuit. *Garrison v. Int'l Paper Co.*, 714 F.2d 757, 759 (8th Cir. 1983) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946)) ("Because Title VII actions are governed by a federal statute of limitations, the Arkansas saving clause is inapplicable."). "Dismissal without prejudice operates to leave the parties as if no action had been brought at all." *Moore v. St. Louis Music Supply Co.*, 539 F.2d 1191, 1194 (8th Cir. 1976). It is undisputed that Plaintiff filed this action on February 16, 2024, **Ex. 2,** and it is undisputed that the EEOC right-to-sue was issued on January 7, 2020 **Ex. 47**. Plaintiff failed to file this action within ninety (90) days of the right-to-sue.

All of Plaintiff's Title VII claims, including claims related to Promotion One, are barred by the statute of limitations.

### 2. Plaintiff's claims related to Promotions Two, Three, Four, and Five should be dismissed for failure to exhaust administrative remedies under Title VII.

Even if the Court does find that the Arkansas savings statute revives Plaintiff's Title VII claims, Plaintiff's claims under Title VII should be dismissed with prejudice for failure to exhaust administrative remedies in relation Promotions Two, Three, Four, and Five.

Title VII requires that an employee file a charge of discrimination with the EEOC within 180 days of the allegedly unlawful employment practice. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). "Allegations outside the scope of the EEOC charge . . . circumscribe the EEOC's investigatory and conciliatory role, and for that reason are not allowed." *Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 836 (8th Cir. 2000), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (citation omitted).

"Before the federal courts may hear a discrimination claim, an employee must fully exhaust her administrative remedies." *Burkett v. Glickman*, 327 F.3d 658, 660 (8th Cir. 2003); 42 U.S.C. § 2000e–5(e). "Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). "Although an EEOC complaint need not specifically articulate the precise claim, it must nevertheless be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim." *Fair v. Norris*, 480 F.3d 865, 867 n. 2 (8th Cir. 2007) (internal quotation omitted). *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006) (*cert. denied*, 549 U.S. 954 (2006)).

If the EEOC gives an individual a right-to-sue letter following the EEOC investigation, "the charge limits the scope of the subsequent civil action because the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 672 (8th Cir. 2006) (internal citation and quotation omitted). Failure to promote claims are discrete events requiring separate EEOC complaints for the purpose of exhausting administrative remedies. *Dorsey v. Pinnacle Automation Co.,* 278 F.3d 830, 838-839 (8th Cir. 2002). "Permitting claims to be brought in court which are outside the scope of the EEOC charge would circumscribe the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge." *Wedow at 672.*

On September 25, 2019, Plaintiff filed an EEOC charge alleging that he was being paid less, received a lower raise, and was denied a promotion because of his race and in retaliation for filing a previous EEOC charge filed in 2016 (493-2016-00268). Plaintiff's 2019 EEOC charge states specifically that the discrimination he is alleging in the charge took place between May 10, 2019, and July 30, 2019. **Ex. 47**. Notably, Plaintiff did not check the box stating that the alleged discrimination was a continuing action. *Id.* There is no way to read Plaintiff's EEOC charge to state that his claim was for any continuing actions by Defendants. Plaintiff did not file any additional EEOC complaints or amend his previous EEOC complaint. Therefore, Plaintiff failed to exhaust his remedies with respect to September 26, 2019, November 21, 2019, May 18, 2020, and July 9, 2020, promotions.

### 3. Plaintiff's Title VII claims fail on the merits.

Even if the Court were to find that Plaintiff's Title VII claims should not be dismissed for the reasons stated above, Plaintiff's Title VII claims should be dismissed with prejudice because

there is no dispute of material fact and Defendants are entitled to judgment under the law. For Promotions Three, Four, and Five, Plaintiff cannot make a *prima facie* case for race discrimination, as an applicant in the same protected class as Plaintiff was selected for the position. For Promotions One and Two, Defendants had a legitimate non-discriminatory reason for deciding not to promote Plaintiff, and Plaintiff cannot present evidence sufficient to show that Defendants' reasons were mere pretext. For all five failure-to-promote claims, Plaintiff cannot make a *prima facie* case for retaliation, as Plaintiff cannot show that there was a causal connection between any of his complaints and the decisions not to promote him. He also cannot show that the Defendant's non-discriminatory reason for decided not to promote Plaintiff were mere pretext. Finally, Plaintiff cannot make a *prima facie* case for disparate treatment in pay, and if so, he cannot show that Defendants' non-discriminatory reason for any alleged pay discrepancy was mere pretext.

### i. Salary Discrimination Claim

Plaintiff's Title VII disparate pay claims fail because Plaintiff cannot establish a *prima facie* case of discrimination. Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Absent direct evidence of discrimination, Plaintiff's Title VII salary-discrimination claim is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Torgerson,* 643 F.3d at 1044. Under this framework, Plaintiff must first establish a *prima facie* case of discrimination. *Id.* at 1046. To do so, he must show: (1) he is a member of a protected class; (2) he was meeting the employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Fields v. Shelter Mut. Ins. Co.,* 520 F.3d 859, 864 (8th Cir.2008). The

burden of production then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason" for the pay disparity. *Torgerson,* 643 F.3d at 1044. The burden then shifts back to the Plaintiff to prove that the proffered reason is pretext for discrimination. *Id.* He retains at all times the ultimate burden of proof and persuasion that the defendant discriminated against him. *Id.* See *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 716 (8th Cir. 2012).

It is unclear from Plaintiff's complaint as to which employees he believes he was similarly situated to, and his complaint is unclear as to when Plaintiff believes his pay was unfair, stating only a general allegations that similarly situated white employees have been paid more than him over a period of several years. **Ex. 2**. However, Plaintiff did request a salary equity review sometime on June 17, 2019. **Ex. 31; Ex. 49, PP. 2** As a result of that equity review, Human Resources staff concluded that, based on the race-neutral equity review policy and the work experience of white equipment operators that each of the white equipment operators making more money than Plaintiff had more experience, and thus a higher equity score and higher salary. **Ex. 31; Ex. 49, PP 2.** Dale Lester, Timothy Derline, Carl New, and Tommy Redmon were the white equipment operators with higher salaries than Plaintiff at the time, and all of them had significantly more experience than Plaintiff, and three of them (New, Lester, and Redmon) had more experience with the City of Little Rock. **Ex. 6 ¶ 12; Ex. 55; Ex. 25.** In his Deposition, Plaintiff claims Derline's prior experience is "propaganda." **Ex. 40, PP. 69-70.**

At the time Plaintiff requested an equity review in 2019, the City's equity review policy used a mathematical calculation considering only the work experience, education, and required licenses of employees to determine equity score and pay. **Ex. 6 ¶ 9; Ex. 39.** A calculation of salary based on experience and education is a legitimate non-discriminatory reason for pay disparities. *Schottel v. Nebraska State College System,* 42 F.4th 976, 982 (8th Cir. 2022)

Plaintiff cannot show he was making less money than similarly situated white employees, because the comparators were not similarly situated to Plaintiff. To be considered similarly situated, comparators must be "similarly situated in all relevant respects." *Oniyah* at 719. This requirement is rigorous at the pretext stage. *Id.* The comparators in this case had substantially more experience than Plaintiff, and therefore were not similarly situated in all relevant respects.

Even if the Plaintiff could show that he was similarly situated to the white Equipment Operators with higher salaries, he cannot show that the City's legitimate non-discriminatory equity review policy and the relative experience levels of the higher paid white employees was pretext for his lower pay. Plaintiff has no evidence that any one from Human Resources would discriminate against him on the basis of race when calculating his salary. Plaintiff likely alleges Eric Petty and Kenneth Wilcox somehow conspired to keep him from being paid as much as white employees. However, it is undisputed that Defendants Petty and Wilcox have absolutely no authority to affect the pay of any employee. **Ex. 6 ¶ 6; Ex. 39.** Not even negative performance evaluations or unfair discipline negatively affect the pay of City employees. **Ex. 6, ¶ 15.** Not only did Plaintiff have the benefit of the Human Resources Department calculating is equity and salary based on an objective, race-neutral, and non-discriminatory criteria, Plaintiff had the benefit of a union agreement that negotiated step raises and equal pay on his behalf. **Ex. 6 ¶ 14; Ex. 40, PP. 37.** Plaintiff can present no evidence that Defendants' legitimate non-discriminatory reason for paying him less than four white employees with substantially more experience was pretext for race discrimination. The record is devoid of evidence that would persuade a reasonable fact-finder that the City's legitimate non-discriminatory reason had no basis in fact or that Plaintiff's race was the real reason for the disparity in pay. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047

### ii. Failure to Promote Claim

In the absence of direct evidence of discrimination, Title VII claims are analyzed under the *McDonnell Douglas* burden shifting test. *Torgerson*, 643 F.3d at 1043. To establish a *prima facie* case of race discrimination in a failure-to-promote claim, a plaintiff must show that: (1) they are a member of a protected group; (2) they were qualified and applied for a promotion to an available position; (3) they were rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011), citing *Shannon v. Ford Motor Co.,* 72 F.3d 678, 682 (8th Cir.1996). If the employee establishes a prima facie case, the burden shifts to the employer "to articulate a legitimate, nondiscriminatory reason" for not promoting him. *Torgerson*, 643 F.3d at 1046. The employee then has the burden "to produce evidence sufficient to create a genuine issue of material fact regarding whether [the employer's] proffered nondiscriminatory justifications are mere pretext for intentional discrimination." *Id.*

Of the five positions Mr. Lockhart applied for and did not obtain, three of those promotions (Promotion Three, Four, and Five) were given to African-American individuals (Brian Grant, promoted July 9, 2020; Michael Burress, promoted May 18, 2020; and Kizma Williams, promoted November 21, 2019). **Ex. 18; Ex. 19; Ex. 20; Ex. 10 ¶ 1, 6, 8, 9; Ex. 9 ¶ 1, 5; Ex.** Only two of the promotions (Promotions One and Two) were given to white individuals (Lee Church, white male, Dale Lester (and alternatively Kevin Page), white male). Therefore, Plaintiff's claims related to Promotions Three, Four, and Five should be dismissed because the applicants selected for the position were of the same protected class as Plaintiff.

Plaintiff does not have any direct evidence of discrimination, and no direct evidence of discrimination exists in the record. Direct evidence must show a specific link between

discrimination and the non-promotion. *Torgerson* at 1044. There is no evidence in the record that demonstrates the interview panel discriminated against Plaintiff. All panelists involved state as much, and the plaintiff himself admits no questions regarding race were brought up in the interview. **Ex. 40, PP. 90.** Thus, the *McDonnell Douglas* test would apply in this case.

Regarding Promotions One and Two, Defendants have legitimate, non-discriminatory reasons for denying Plaintiff's promotions. "The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Torgerson* at 1047. In each instance, the City's NeoGov system and Human Resources Department used filters to determine which applicants met minimum qualifications based on objective criteria. **Ex. 6 ¶ 17.** In each instance, the City's Human Resources Department supplied the job description and posted the job posting. **Ex. 6 ¶ 17; Ex. 52, PP I-2, I-3.** In each instance, applicants meeting minimum qualifications, as determined by NeoGov and Human Resources were interviewd by a diverse panel that included two (2) African-American panelists and at least one (1) female panelist. **Ex. 8 ¶ 5, 12; Ex. 15 ¶ 8; Ex. 12 ¶ 9.** Additionally, the applicants selected for the positions as a result of the April 29, 2019 interviews and the September 26, 2019 interviews had substantially more experience than Plaintiff, particularly supervisory experience. Defendants have been steadfast in their reason for not promoting Reginald Lockhart, that he lacked experience and the applicants selected for the positions did not. **Ex. 37; Ex. 49, PP. 3.**

Plaintiff cannot establish that his failure to be promoted was discriminatory. The Eighth Circuit has consistently held that the hiring of individuals whom the employer believes possess superior work experience or relevant experience in the particular field constitutes legitimate, non-discriminatory reasons for the denial of promotions and returns the burden to the plaintiff to show that the reasons were pretextual or that the discrimination was more likely than not the reason for

the discrimination. *See* e.g., *Lidge-Myrtil v. Deere & Co.*, 49 F.3d 1308, 1312 (8th Cir. 1995) (courts do not question the business judgment of an employer in determining which candidate is better qualified for the position); *Turner v. Honeywell Fed. Mfg. & Techns., LLC*, 336 F.3d 716, 723 (8th Cir. 2003) (employer's belief that person ultimately hired to fill position was "uniquely qualified to satisfy the demands of the position" constitutes a legitimate, nondiscriminatory reason for employer's failure to promote plaintiff). The employee may demonstrate pretext either by showing "that the employer's explanation is unworthy of credence because it has no basis in fact" or "by persuading the court that a prohibited reason more likely motivated the employer." *Id.* at 1047.

If the plaintiff claims that the selected applicant was less qualified than the applicant, the plaintiff "must show that [the employer] hired a less qualified applicant" to create an inference of pretext. *Id.* at 1049. "If the comparison reveals that the plaintiff was only similarly qualified or not as qualified as the selected candidate, then no inference of discrimination would arise." *Id.* In determining whether an employer's justification for not hiring an employee is pretextual, this Court does not examine whether an employer's reason for that decision was a correct business judgment but rather whether the employer honestly acted on that reason. *See McKay v. U.S. Dep't of Transp.*, 340 F.3d 695, 700 (8th Cir.2003) (stating that "pretext inquiry is limited to whether the employer gave an honest explanation of its behavior, not whether its action was wise, fair or correct").

It is mutually agreed upon by all panelists (other than Calvin Johnson, who is deceased) that interviewed Plaintiff on April 29, 2019 that they asked questions relating directly to the applicants' supervisory experience and reviewed the applications which reflected the experience each applicant had. **Ex. 8 ¶ 6; Ex. 15 ¶ 10; Ex. 3 ¶ 16-17.** It is also an undisputed fact that Dale Lester had

approximately ten (10) years of experience as a Supervisor I (Foreman I) and Assistant Street Superintendent (Foreman III) in the same division of Public Works that the applicants were interviewing for. He had thirty-four (34) years of experience in the Streets Division as a whole. **Ex. 54; Ex. 3 ¶*19*; Ex. 15 ¶*17*; Ex. 6 ¶*12*; Ex. 8 ¶*8.*** It is an undisputed fact that Kevin Page had over twenty (20) years of experience as a Supervisor I in the Parks and Recreation Department before applying for he position.  **Ex. 7 ¶*3*; Ex. 37; Ex. 38; Ex. 49; Ex. 3 ¶*19*; Ex. 8 ¶*9*; Ex. 15 ¶*18*.** Reginald Lockhart had field supervision experience, but he had never held an official supervisory position. Reginald Lockhart, though biased, does not even assert he had more experience than Dale Lester in his deposition, saying their experience was "equal." **Ex. 40, PP. 78.** Plaintiff admits he was not familiar with Kevin Page's background and experience. **Ex. 40, PP. 76.** Plaintiff believes only experience within a certain division should matter and all prior experience or experience in another department should be ignored. **Ex. 40, PP. 119 – 120.**

The same is true for the Supervisor II (Control Devices) position Plaintiff interviewed for on September 26, 2019. The panelists reviewed applications and focused on supervisory experience in their interview process. **Ex. 8 ¶ 13; Ex. 12 ¶ 10.** At the time, Lee Church had been the Supervisor I (Control Devices) for three (3) years and had over twenty (20) years of experience as a Fire Engineer. **Ex. 8 ¶ 14; Ex. 12 ¶ 11.** Plaintiff had been in the Streets Division his whole career and had no experience in the Control Devices Division. He also had no supervisory experience. He agreed in his deposition that he was not as qualified for the Supervisor I (Control Devices) position as he was the Supervisor I (Streets) position. **Ex. 40, PP 128.** Despite that he believes he should have been promoted to be the supervisor of the Supervisor I (Control Devices) over Mr. Church. Although Plaintiff may feel that he should have received each promotion he applied for, his subjective opinions regarding his own qualifications are not evidence of pretext. *See Curby v.*

*Solutia, Inc.*, 351 F.3d 868, 874 (8th Cir. 2003), citing *Rose-Maston v. NME Hosps., Inc.,* 133 F.3d 1104, 1109 (8th Cir. 1998) ("[Plaintiff] claims she was more qualified, but her subjective opinions regarding her own qualifications are not evidence of pretext."). There is no argument as to whether Kevin Page and Dale Lester had more supervisory experience than Plaintiff, as Page and Lester's supervisory experience dwarfed Plaintiff's. There is no argument to be had as to whether Plaintiff had more experience and qualifications as it related to the Supervisor II (Control Devices) position. He cannot present any evidence otherwise that he was more qualified than Page or Lester for the Supervisor I (Streets) position on April 29, 2019 or more qualified than Lee Church for the Supervisor II (Control Devices) position. As such, Plaintiff cannot create an inference of racial discrimination.

Plaintiff is likely to argue that the interview panel process allows too much subjectivity. However, the fact there was a subjective interview process, alone, is not enough to create a fact question for the jury. *Amini v. City of Minneapolis,* 643 F.3d 1068, 1076 (8th Cir. 2011). Additionally, the 8th Circuit has found that setting forth minimum requirements in a NeoGov application is objective criteria and when subjective and objective criteria are used in the hiring process, there is no inference of discrimination. *Pribyl v. County of Wright,* 964 F.3d, 793, 796 (8th Cir. 2020). Additionally, all of the panelists involved agree that they used the job descriptions provided by Human Resources to create their questions, they asked all applicants the same, or substantially similar questions, and that they focused on the supervisory roles of the position, all signs of fairness and objectivity. **Ex. 8; Ex. 12; Ex. 3; Ex. 15.** In *Pribyl,* the plaintiff was objectively *more* qualified than the person selected for the position, and the court found that because objective qualifications were considered in deciding to grant the plaintiff an interview (through the NeoGov system), that the subjective interview process did not raise an inference of discrimination. *Id.*

Regardless, in this case Lester, Page, and Church were objectively more qualified than Plaintiff based on their experience alone, and experience is an objective criteria. *Bennett v. Nucor Corp*, 656 F.3d 802, 815 (8th Cir. 2011).

Plaintiff's primary argument is that Kenneth Wilcox masterminded a plan to keep Plaintiff from being promoted by changing job descriptions and interview criteria at the last moment and by putting interview panelists that would do his bidding on the panels and unduly influencing them to rank candidates in a certain order. The Plaintiff refers to it as a "Jedi mind trick" in his deposition. **Ex. 40, PP. 108.** However, there is no evidence or logic behind Plaintiff's assertions.

Plaintiff alleges that Defendants originally advertised the open Supervisor I position as Supervisor I (Heavy Equipment), but right before the interviews began Defendants changed the position to Supervisor I (Concrete). Plaintiff alleges that Defendants facilitated this switch by coercing Norman Stanley to take over the heavy equipment responsibilities so that they could render Plaintiff's experience in equipment operation useless and tank his interview.

However, all evidence in the record is in opposition to this conspiracy theory. First, Norman Stanley states in his affidavit that he wanted to switch the heavy equipment and was not forced to do so. **Ex. 14 ¶ 11.** Second, it was common practice for Kenneth Wilcox and the Assistant Street Superintendent to ask supervisors in the Streets Division if they wanted to switch roles when a Supervisor I vacated their position, as testified to by Michael Burress, Norman Stanley, Kevin Page, and Darrell Romes. **Ex. 7; Ex. 9; Ex. 14; Ex. 15.** Kenneth Wilcox established this practice in 2017 after Herman Wiley brough it up in an exit interview with Eric Petty. **Ex. 3; Ex. 4.** Before 2017, Wilcox would allow the supervisors to switch roles but only on request from the supervisors. Third, the position was posted by Human Resources as "Supervisor I" with no reference whatsoever to being the supervisor over the heavy equipment crews. The attached job description is for Supervisor

I (Streets and Drainage Maintenance). **Ex. 50; Ex. 42**. Fourth, all Supervisor I (Streets) were expected to be able to supervise crews in each activity, so the focus of the interviews are on supervisory experience, not specific experience over any single activity or crew within the Streets Division. Plaintiff admits as much in his deposition. **Ex. 40, PP. 93-94.** Plaintiff also corroborates the interview panel in that he was not asked any questions about heavy equipment, concrete, or any other particular activity with the Streets Division, but instead questions focused on leadership. **Ex. 40, PP. 91-92.** Regardless as to which activity the applicant selected was going to supervise, the interview questions would have been about supervisory experience and duties, regardless. Additionally, all of the panelists agree that Kenneth Wilcox did not interfere with the questions they asked, try to interfere with their rankings, or attempt to negatively influence their rankings against Reginald Lockhart. **Ex. 8; Ex. 9; Ex. 10; Ex. 11; Ex. 12; Ex. 13; Ex. 15.** Several more panelists corroborate that Kenneth Wilcox and Eric Petty have never tried to influence their rankings on any interview panel. **Ex. 8; Ex. 9; Ex. 10; Ex. 11; Ex. 12; Ex. 13; Ex. 15.** Finally, Plaintiff's claim that Defendants specifically filled the heavy equipment activity with Norman Stanley to block out Plaintiff flies in the face of the fact that Dale Lester had much more experience than Plaintiff in heavy equipment, and Lester turned down the position because Wilcox wouldn't give him guarantees that he would be supervising the heavy equipment crews. Allowing Norman Stanely to move to heavy equipment did not affect only Plaintiff, but also Dale Lester, a white candidate. **Ex. 3; Ex. 7; Ex. 40, PP.96.** None of these theories are evidence that race was a factor.

Kenneth Wilcox was not on the panel for Supervisor II (Control Devices), although Plaintiff claims he was in his complaint. Additionally, Plaintiff was promoted to Supervisor I within two (2) years of the April 29, 2019 interview under the same panel interview process he claims was tainted in April 29, 2019. Kevin Page and Michael Burress corroborate that the same interview process was

used                                                                          and

### iii. Retaliation Claim

Plaintiff's claim that he was denied promotion because he was retaliated against for filing a complaint with Human Resources, and/or filing his EEOC claim, fail because the time between those events is far too remote to establish a temporal connection that could show retaliation, and Plaintiff can present no evidence of pretext.

Plaintiff's retaliation claims are subject to the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Title VII and ACRA claims are analyzed in the same manner. *Burkhart v. Am. Railcar Indus., Inc.*, 603 F.3d 472, 476–77 (8th Cir. 2010). To state a *prima facie* case of retaliation, a plaintiff must show that (1) they engaged in protected activity, (2) they suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action. Id. If Plaintiff were to establish a *prima facie* case, Defendants must then proffer a legitimate, non-retaliatory reason for their actions. The burden then shifts to Plaintiff to present evidence that (1) creates a question of fact as to whether the proffered reason was pretextual and (2) creates a reasonable inference that Plaintiff acted in retaliation." *Id.*, citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir.2002).

Generally, "more than a temporal connection is required to present a genuine factual issue on retaliation," *Peterson v. Scott County,* 406 F.3d 515, 524 (8th Cir.2005), and only in cases where the temporary proximity is very close can the plaintiff rest on it exclusively. *Smith v. Fairview Ridges Hosp.,* 625 F.3d 1076, 1087–88 (8th Cir.2010). The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months. *See, e.g., Littleton v. Pilot Travel Ctrs., LLC,* 568 F.3d 641, 645 (8th Cir.2009) (a gap of seven

months "not sufficiently contemporaneous" to indicate a causal connection); *Recio v. Creighton Univ.,* 521 F.3d 934, 941 (8th Cir.2008) (a six-month gap too long to give rise to inference of causal connection). "We have held that an interval as brief as two months did not show causation for purposes of establishing a retaliation claim and that a two-week interval was 'sufficient, but barely so.'") (internal citations omitted) *Tyler v. Univ. of Arkansas Bd. of Trustees*, 628 F.3d 980, 986–87 (8th Cir. 2011), citing *Lewis v. St. Cloud State Univ.,* 467 F.3d 1133, 1138 (8th Cir. 2006). Plaintiff filed an EEOC complaint in 2016, over three years before the April 29, 2019 interview. Plaintiff filed an HR complaint around August of 2018. These protected activities are over seven months before the non-promotion in April of 2019, and all of the other non-promotions. Any inference of a causal connection "vanished" after seven months. Even if a causal connection could be shown, for the same reasons as Plaintiff cannot show Defendants' non-discriminatory reasons for not promoting him were evidence of pretext, he likewise cannot show that they were pretext for retaliation. Promotions Three, Four, and Five used the same interview process with diverse interview panelists asking questions directly related to the job description, skills, duties, and responsibilities of the position. Plaintiff's rankings got progressively better, but ultimately another applicant was selected. In each of those interview, the panelists agree there as no negative interference by Wilcox or Petty. **Ex. 8; Ex. 10; Ex. 13.**

## B. Section 1983 Claims

### 1. Plaintiff's claims related to promotions 2, 3, 4, and 5 are barred by statute of limitations

The applicable state law statute of limitations governs § 1983 claims. *See Board of Regents v. Tomanio,* 446 U.S. 478, 484, 100 S. Ct. 1790, 64 L.Ed.2d 440 (1980). Section 1983 claims arising from conduct that allegedly occurred in Arkansas have a three-year statute of

limitations. *Morton v. City of Little Rock,* 934 F.2d 180, 182 (8th Cir.1991). The Arkansas savings statute does apply to Section 1983 claims. *Whittle v. Wiseman,* 683 F.2d 1128, 1129 (8th Cir.1982). "Ark. Code Ann. § 16-56-126 permits a plaintiff, who commences a suit within the appliable statute of limitations . . . to refile the same action within a period of the 'savings statute'. *Carton v. Missouri Pacific R. Co.,* 295 Ark. 126, 128 (Ark. 1988). However, only causes of action pleaded in the non-suited action are tolled by the savings statute. *Dillaha v. Yamaha Motor Corp.,* 23 F.3d 1376, 1377–78 (8th Cir.1994).

Plaintiff's original complaint does not even mention the non-promotion events that occurred on September 26, 2019 (Promotion Two), November 21, 2019 (Promotion Three), May 18, 2020 (Promotion Four), or July 9, 2020 (Promotion Five). **Ex. 1.** The requested relief was specifically related to the Supervisor I position that Plaintiff interviewed for on April 29, 2019. ***Id.*** Because the savings statute does not revive these claims, each of the non-promotion claims would have to independently satisfy the statute of limitations. This action was filed on February 16, 2024, therefore Promotions Two, Three, Four, and Five were not filed within three years of the alleged actionable conduct.

### 3. For the same reasons Plaintiff's Title VII claims fail on the merits, Plaintiff's Section 1983 claims fail on the merits

Section 1983 race discrimination claims are evaluated under the *McDonnell Douglas* framework applicable to Title VII claims. *Richmond v. Board of Regents of University of Minnesota,* 957 F.2d 595, 598 (8th Cir.1992). Therefore, for the reasons already explained, Plaintiff's discrimination and retaliation claims fail on the merits.

**C. ACRA claims**

    **1. Plaintiff's claims related to promotions 2, 3, 4, and 5 are barred by statute of limitations**

The Arkansas savings statute only revives claims that were part of the original action.

*Carton v. Missouri Pacific R. Co.,* 295 Ark. 126, 128 (Ark. 1988); *Dillaha v. Yamaha Motor*

*Corp.,* 23 F.3d 1376, 1377–78 (8th Cir.1994). Plaintiff failed to file claims related to Promotions

Two, Three, Four, and Five within the one-year statute of limitations for claims under A.C.A. §16-

123-107 or the three-year statute of limitations for claims under A.C.A §16-123-105 and A.C.A.

§16-123-108. *Mountain Home Flight Service, Inc.,* 758 F.3d 1038, 1044-1045.

    **2. For the same reasons Plaintiff's Title VII claims fail on the merits, Plaintiff's ACRA claims fail on the merits.**

"Claims premised under the Arkansas Civil Rights Act of 1993 are analyzed in the same

manner as Title VII claims." *Henderson v. Simmons Foods, Inc.,* 217 F.3d 612, 615 n. 3 (8th Cir.

2000). . *See Richmond v. Bd of Regents of Univ. of Minnesota*, 957 F.2d 595, 598 (8th Cir. 1992).

**D.  POTENTIAL DISPARATE IMPACT CLAIM**

To the extent that Plaintiff attempts to make a disparate impact claim under 42 U.S.C. §

1983 or ACRA, that claim should be dismissed with prejudice. Plaintiff cannot establish a *prima*

*facie* case, because the City has a race-neutral equity review policy for determining salaries and

wages. The equity review policy allows a person's experience to be reviewed to determine

whether they are being compensated in accordance with the City's policy. A person's experience

is considered, but performance evaluations or disciplinary history are not. Despite this, Plaintiff

can present no evidence of a City-wide pay disparity or that there is a better system the City could

use to prevent alleged pay disparities.

## V. CONCLUSION

As described in detail herein, each of the discrimination and retaliation claims asserted by Reginald Lockhart fail as a matter of law. Based on exhibits, affidavits, and undisputed material facts, Defendants are entitled to Summary Judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff's complaint must be dismissed with prejudice on all counts.

Respectfully submitted,
Thomas M. Carpenter
City Attorney

/s/ Cody J. Pritchard
Cody J. Pritchard
Ark. Bar No. 2017157
Deputy City Attorney
500 West Markham, Suite 310
Little Rock, Arkansas 72201
(501) 371-4527
cpritchard@littlerock.gov