IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**REGINALD D. LOCKHART**                                                                 **PLAINTIFF**

VS.                           CASE NO. 4:24-CV-00143-JM

**ERIC PETTY, Individually;**
**KENNETH WILCOX Individually; and**
**CITY OF LITTLE ROCK, a municipality**                                          **DEFENDANTS**

### DEFENDANTS' REPLY TO BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION REPLY TO PLAINTIFF'S STATEMENT OF PERTINENT FACTS

Plaintiff, Reginald Lockhart, concedes all claims related to the denied promotions that occurred in September, 2019, November, 2019, May, 2020, and July, 2020 are barred by statute of limitations. He also concedes all Title VII claims are time-barred. Plaintiff waived his retaliation claims and disparate pay claims by failing to argue in support of those claims in his Response Brief. Therefore, the only claims remaining for the Court's consideration are the racial discrimination claims under Section §1983 and the Arkansas Civil Rights Act pertaining only to the denied promotion stemming from the April, 2019 Supervisor I interview and non-selection of Plaintiff.

Defendants do not deny Plaintiff had experience operating heavy equipment nor that he met the minimum qualifications of the Supervisor I position that opened following the retirement of Jim Carloss. Defendants do not deny that one of the minimum qualifications for the position was experience with air compressors, jackhammers, and asphalt rollers, none of which are heavy equipment.

Plaintiff states Jim Carloss told Plaintiff it was his belief that Plaintiff was likely next in line for the Supervisor I position Jim Carloss was vacating. However, Plaintiff did not bother to get an affidavit from Jim Carloss and this evidence is inadmissible hearsay that should not be considered

by the Court in support of Plaintiff's claims. Fed. R. Civ. Pro. 56(c)(4); *Brooks v. Tri-Systems, Inc.,* 425 F.3d 1109, 1111 (8th Cir. 2005). Defendants do not deny Plaintiff had twelve (12) years of equipment operation experience, satisfactory employee evaluations, and a letter of recommendation from George Bridges.

Defendants admit Plaintiff was interviewed on April 29, 2019 by Kenneth Wilcox, Darrell Romes, Calvin Johnson, and Melissa Allen. Plaintiff mischaracterizes the evidence by contending Norman Stanley moved distinct positions from his Supervisor I position into the Supervisor I position vacated by Jim Carloss, as if a lateral transfer occurred. The record is clear that the positions are the same and that crew assignments are made as part of the managerial function of the Street Superintendent and Assistant Street Superintendent. However, Norman Stanley did request to be reassigned to the heavy equipment crews after the departure of Jim Carloss and Defendant Wilcox assented to Stanley's request. Plaintiff contends he would have been more qualified for the Supervisor I position had Norman Stanley not been allowed to be reassigned to the heavy equipment crews. However, such a contention is immaterial, as the Supervisor I selection process prioritized supervisory experience over experience in any specific activity or crew of the streets department. This is confirmed by the testimony of all of the interview panelists, two of the other individuals that interviewed for the position, the plaintiff's own deposition, and Plaintiff's own Exhibit 6, in which all of the "essential functions" relate to supervisory duties, and as part of those supervisory duties, an essential function is "assigns, supervises and reviews *equipment operation*, *concrete finishing*, asphalt repair, ditch repair and cleaning and removal of debris from right-of-way properties." It is also undisputed that Dale Lester also had more experience in heavy equipment than Plaintiff.

Plaintiff admits he was not asked any questions about heavy equipment, which confirms the undisputed evidence that the panelists' focus was on the supervisory duties and responsibilities

required of the Supervisor I position. Plaintiff states it is his belief that Wilcox switched the focus of the position to box out Plaintiff. However, plaintiff's subjective belief is not evidence, and he provides no supporting evidence of such an allegation. Norman Stanley states the reassignment was voluntary and at his request. Plaintiff attempts to assert hypothetical conjecture from Wilcox's deposition and drastically mischaracterizes Petty's deposition testimony. Petty specifically stated the reassignment of duties after a Supervisor I vacates their position is "not normal, in that it happens every time there is a vacancy." However, right after that he states it does happen quite often. The regularity of this is supported by the testimony of Norman Stanley, Darrell Romes, Kevin Page, Michael Burress, Kenneth Wilcox, and Eric Petty.

The defendants do not deny that the interview process has subjective elements. However, the facts are undisputed that the interview process also contains objective elements, such as the use of NeoGov to determine minimum qualifications, the requirement of a CDL license, and the consideration of supervisory experience. Plaintiff presents speculation and conjecture in his allegations of manipulation and unfair and arbitrary scoring by the interview panel. However, Plaintiff does not present any evidence these things occurred in the interview process on April 29, 2019. Plaintiff also fails to present any evidence that Plaintiff's race played a factor in the interview process. The interview panel is unanimous in that no malfeasance occurred and that they preferred the supervisory experience of Dale Lester over that of the plaintiff.

Plaintiff attempts to support his argument with hypothetical deposition questions resulting in speculation and conjecture, which is insufficient to create genuine disputes of material facts to defeat a Motion for Summary Judgment supported by evidence properly in the record. The plaintiff states the Court is not allowed to consider credibility of witnesses or the weight of the evidence in a summary judgment determination. Defendants agree. The credibility of the interview panelists in

this case, who all submitted affidavits (except Calvin Johnson, who is deceased) cannot be questioned on summary judgment. Because the court does not make determinations of the credibility of witnesses at the summary judgment stage, it is up to the plaintiff to present evidence that controverts the testimony of the interview panelists in this matter. He fails to do so, and no genuine dispute of material fact exists that could lead the court or a jury to believe the plaintiff's race played any role in the determination to promote Dale Lester to Supervisor I.

On or about March 18, 2021, Reginald Lockhart interviewed for the Supervisor I (Streets) position and received the promotion after a panel unanimously ranked him the best applicant that interviewed for the position.

**Table 1: Positions for which Plaintiff applied between April 2019 and March 2021.**

| Interview Date | 3/18/21 | 7/9/20 "Promotion 5" | 5/18/20 "Promotion 4" | 11/21/19 "Promotion 3" | 9/26/19 "Promotion 2" | 4/30/19 "Promotion 1" |
|---|---|---|---|---|---|---|
| Position | Supervisor I | Street Repair Specialist | Supervisor I | Street Repair Specialist | Supervisor II (Control Devices) | Supervisor I (Streets) |
| Top scorer per panel | **Plaintiff Reginald Lockhart** (black male) | **Brian Grant** (black male) | **Michael Burress** (black male) | **Kizma Williams** (black female) | **Lee Church** (white male) | **Dale Lester*** (white male)<br><br>*Lester declined the position, which was then given to second highest scorer, **Kevin Page** (white male) |
| Panel Members | **Kevin Page** (white male)<br>---<br>**Monica Crayton** (black female)<br>---<br>**Michael Burress** (black male) | **Kenneth Wilcox** (white male)<br>---<br>**Wanda Sullivan** (black female)<br>---<br>**Kizma Williams** (black female) | **Kenneth Wilcox** (white male)<br>---<br>**Kizma Williams** (black female)<br>---<br>**Johnnie Dorn** (black male) | **Kenneth Wilcox** (white male)<br>---<br>**Johnnie Dorn** (black male)<br>---<br>**Melissa Allen** (black female) | **Mark Jacobi** (white male)<br>---<br>**Melissa Allen** (black female)<br>---<br>**Rosevelt Lewis** (black male) | **Kenneth Wilcox** (white male)<br>---<br>**Darrell Romes** (black male)<br>---<br>**Calvin Johnson** (white male)<br>---<br>**Melissa Allen** (black female) |

4

## III. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

Summary Judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. Pro. R. 56

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). All reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). However, "the plaintiff is not relieved of his own burden of producing in turn, affirmative evidence that would support a jury verdict in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct 2505, 91 L.Ed.2d 202 (1986). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Torgerson v. City of Rocester,* 643 F.33d 1031, 1043 (8th Cir. 2011) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct 2548 (quoting Fed. R. Civ. P. 1)).

## IV. ARGUMENT

### A. Plaintiff's Title VII Claims are Time-Barred

Plaintiff concedes all of his Title VII claims are time barred.

### B. Claims Related to Promotions Two, Three, Four, and Five are Time-Barred

Plaintiff concedes all claims related to promotions two, three, four, and five are time barred.

### C. Plaintiff Waived All Retaliation and Pay Disparity Claims

Plaintiff failed to argue in support of his retaliation claims and disparate pay claims, and he did not include facts relevant to these two claims in his Statement of Pertinent Facts. "[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument." *Gunapt Dev., L.L.C. v. Peine Lakes, L.P.,* 641 F. Supp.3d 506, 619 (E.D. Mo. 2022) (Citing *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009)). "The Eighth Circuit has been clear that 'failure to oppose a basis for summary judgment constitutes a waiver of that argument.'" *Bosch v. Thurman,* No. 4:22-CV-00677-LPR, 2024 WL 841252 at 15 (E.D. Ark. Feb. 28, 2024) (Citing *Satcher* at 735).

### D. Plaintiff's Racial Discrimination Claims Fail on the Merits

Because Plaintiff's Title VII claims are time-barred, Plaintiff is proceeding on his claims under Section 1983 and the Arkansas Civil Rights Act. Section 1983 race discrimination claims are evaluated under the *McDonnell Douglas* framework applicable to Title VII claims. *Richmond v. Board of Regents of University of Minnesota,* 957 F.2d 595, 598 (8th Cir.1992). "Claims premised under the Arkansas Civil Rights Act of 1993 are analyzed in the same manner as Title VII claims." *Henderson v. Simmons Foods, Inc.,* 217 F.3d 612, 615 n. 3 (8th Cir. 2000). . See *Richmond v. Bd of Regents of Univ. of Minnesota*, 957 F.2d 595, 598 (8th Cir. 1992).

### I. Disparate Treatment

In the absence of direct evidence of discrimination, disparate treatment claims are analyzed under the *McDonnell Douglas* burden shifting test. *Torgerson*, 643 F.3d at 1043. To establish a *prima facie* case of race discrimination in a failure-to-promote claim, a plaintiff must show that: (1) they are a member of a protected group; (2) they were qualified and applied for a promotion to an available position; (3) they were rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011), citing *Shannon v. Ford Motor Co.,* 72 F.3d 678, 682 (8th Cir.1996).  If the employee establishes a prima facie case, the burden shifts to the employer "to articulate a legitimate, nondiscriminatory reason" for not promoting him. *Torgerson*, 643 F.3d at 1046. The employee then has the burden "to produce evidence sufficient to create a genuine issue of material fact regarding whether [the employer's] proffered nondiscriminatory justifications are mere pretext for intentional discrimination." *Id.*

Plaintiff does not have any direct evidence of discrimination, and no direct evidence of discrimination exists in the record. Direct evidence must show a specific link between discrimination and the non-promotion. *Torgerson* at 1044.  There is no evidence in the record that demonstrates the interview panel discriminated against Plaintiff. All panelists involved state as much, and the plaintiff himself admits no questions regarding race were brought up in the interview. **Ex. 40, PP. 90.**  Plaintiff argues statistics regarding discipline in the workplace unrelated to the plaintiff is direct evidence that Plaintiff was discriminated against on April 29, 2019. However, there is no direct link between the statistics and the plaintiff or the statistics and the non-promotion on April 29, 2019. Thus, the *McDonnell Douglas* test would apply in this case.

Defendants do not contend that Plaintiff fails at the *prima facie* stage. He is a member of a protected class, he applied for the Supervisor I position, he was qualified for that position, and a white applicant was selected for the position over Plaintiff. Defendants have legitimate, non-discriminatory reasons for denying Plaintiff's promotions. "The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Torgerson* at 1047. The diverse interview panel selected Dale Lester based on his vast experience, which included thirty-four (34) total years of experience in the Streets Division at Public Works and ten (10) years as a Supervisor in the Streets Division at Public Works. **Ex. 37; Ex. 49, PP. 3; Ex. 8 ¶ 6-8; Ex.15 ¶ 16-18; Ex. 3 ¶ 19.**

The Eighth Circuit has consistently held that the hiring of individuals whom the employer believes possess superior work experience or relevant experience in the particular field constitutes legitimate, non-discriminatory reasons for the denial of promotions and returns the burden to the plaintiff to show that the reasons were pretextual or that the discrimination was more likely than not the reason for the discrimination. *See* e.g., *Lidge-Myrtil v. Deere & Co.*, 49 F.3d 1308, 1312 (8th Cir. 1995) (courts do not question the business judgment of an employer in determining which candidate is better qualified for the position); *Turner v. Honeywell Fed. Mfg. & Techns., LLC*, 336 F.3d 716, 723 (8th Cir. 2003) (employer's belief that person ultimately hired to fill position was "uniquely qualified to satisfy the demands of the position" constitutes a legitimate, nondiscriminatory reason for employer's failure to promote plaintiff). The employee may demonstrate pretext either by showing "that the employer's explanation is unworthy of credence because it has no basis in fact" or "by persuading the court that a prohibited reason more likely motivated the employer." *Id.* at 1047.

### i.  Plaintiff did not present evidence that he was more qualified than Dale Lester

A plaintiff may show that the employer's stated reason is pretext for discrimination by showing "that the employer's proffered explanation is unworthy of credence because it has no basis in fact." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1075 (8th Cir. 2011) (Citing *Torgerson,* 643 F.3d at 1047–48.)  Pretext "means a lie, specifically a phony reason for some action." *Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir.1995). The threshold question is whether the employer's "reasons for employment actions are true, not if they are wise, fair or correct." *Dorsey v. Pinnacle Automation Co.,* 278 F.3d 830, 837 (8th Cir.2002) (*citing Wilking v. County of Ramsey,* 153 F.3d 869, 873 (8th Cir.1998)).The record is undisputed that Dale Lester had more total years of experience in the Streets Division of Public Works and as a supervisor in the Streets Division of Public Works than the plaintiff, and the amount of experience between the two is not particularly close. All of the panelists agree (with the exception of Calvin Johnson, who is deceased) that they focused heavily on the supervisory duties of the position when ranking the applicants and determined Dale Lester was more qualified for the position than Reginald Lockhart. **Ex. 8 ¶ 6; Ex. 15 ¶ 10; Ex. 3 ¶ 16-17.**

To show a prohibited reason is more likely because he or she was more qualified than selected candidates, a rejected candidate must present evidence the other candidates were in fact *less* qualified. *Kincaid v. City of Omaha*, 378 F.3d 799, 805 (8th Cir. 2004). "Similar qualifications do 'not raise an inference of discrimination.'" *Torgerson*, 643 F.3d at 1048 (quoting *Chock v. Northwest Airlines*, 113 F.3d 861, 864 (8th Cir. 1997)). Although the record is clear that Dale Lester had significantly more relevant experience and supervisory experience than Plaintiff, even Plaintiff's biased opinion is that their qualifications were "equal." **Ex. 40, PP. 78: 10-13.**

Reginald Lockhart simply was not more qualified than Dale Lester for the Supervisor I position on April 29, 2019.

### ii.  The use of subjective criteria does not raise an inference of discrimination

Plaintiff argues that the use of subjective criteria is impermissible and gives rise to an inference of discrimination. "[T]he mere use of subjectivity in the hiring process is not itself discriminatory." *Amini v. City of Minneapolis,* 643 F.3d 1068, 1076 (8th Cir. 2011). Courts have "cautioned against the use of subjective considerations because they are easily fabricated." *Chambers v. Metropolitan Property and Cas. Inc. Co.,* 351 F.3d 848, 858 (8th Cir. 2003).  However, when "many of those in charge of and involved in the selection process were members of the protected minority," particularly close scrutiny is not required. *Burkett v. Vilsack,* No. 5:11-CV-00170-KGB, 2013 WL 5423853 at 6 (E.D. Ark. Sept. 26, 2013) (Citing *Coble v. Hot Springs Sch. Dist. No. 6,* 682 F.2d 721, 726-727 (8th Cir. 1982) ("ruling that particularly close scrutiny is only required where 'the evaluation is in any degree subjective *and when the evaluators themselves are not members of the protected minority.'"* (emphasis added)).

In this case, it is undisputed that two (2) of the panelists were of the same protected minority as the plaintiff. The Human Resources investigator, Shella Atlas-Evans who investigated the plaintiff's grievance, was of the same protected minority as the plaintiff.  The City Manager, Bruce Moore who authored the denial letter regarding Plaintiff's grievance, was of the same protected minority as the plaintiff. In the cases in which subjective criteria was closely scrutinized, the decision-makers were not part of the plaintiff's protected class. *Catlett v. Missouri Highway and Transp. Com'n,* 589 F.Supp. 929, 945 (W.D. Missouri 1983) (All male interviewers); *Harris v. Ford Motor Co.,* 651 F.2d 609, 610 (8th Cir. 1981). (Male supervisor); *McCullough v. Real Foods, Inc.,* 140 F.3d 1123, 1125 (8th Cir. 1998) (White decision-maker); *Cox v. First Nat. Bank,* 792 F.3d 936,

940 (8th Cir. 2015). (Male decision-maker). In *Bonomo v. Boeing Company,* the 8th Circuit found that even though the non-selection at issue in that case was based on an interview panel that was comprised of members not part of the plaintiff's protected class, that evidence of a previous non-selection made by panelists that were part of the plaintiff's protected class undercut the plaintiff's argument of discriminatory pretext based on a subjective hiring criteria. 63 F.4th 736, 746 (8th Cir. 2023). From April 29, 2019 through July, 2020, Plaintiff applied for five (5) supervisory positions. In total, the interview panels that ranked the candidates as part of those interviews, ten (10) were part of the plaintiff's protected minority and six (6) were not. Out of those five supervisory positions, three of the selected candidates were part of the plaintiff's protected minority and two (2) were not.

The 8th Circuit has found that setting forth minimum requirements in a NeoGov application is objective criteria and when subjective and objective criteria are used in the hiring process, there is no inference of discrimination. *Pribyl v. County of Wright,* 964 F.3d, 793, 796 (8th Cir. 2020). Additionally, all of the panelists involved agree that they used the job descriptions provided by Human Resources to create their questions, they asked all applicants the same, or substantially similar questions, and that they focused on the supervisory roles of the position, all signs of fairness and objectivity. **Ex. 12; Ex. 3 ¶19; Ex. 15 ¶16.** In *Pribyl,* the plaintiff was objectively *more* qualified than the person selected for the position, and the court found that because objective qualifications were considered in deciding to grant the plaintiff an interview (through the NeoGov system), that the subjective interview process did not raise an inference of discrimination. *Id.* Regardless, in this case Lester, Page, and Church were objectively more qualified than Plaintiff based on their experience alone, and experience is an objective criteria. *Bennett v. Nucor Corp*, 656 F.3d 802, 815 (8th Cir. 2011).

Close scrutiny is required only when a hiring process relies "solely on subjective criterion." *Pribyl v. Cnty. Of Wright,* 964 F.3d 793, 797 (8th Cir. 2020). In *Pribyl,* the 8th Circuit found that the use of NeoGov to determine minimum requirements is an objective criterion. *Id.* "It is undisputed that the County set forth objective minimum requirements in its NeoGov application and only the applicants who met those requirements were interviewed. As such, the County considered [Plaintiff's] objective qualifications when it granted her an interview." *Id.* at 697. It is likewise undisputed in this case that NeoGov was used to determine whether or not the applicants met minimum qualifications, of which (1) year of supervisory experience, (1) year of manual labor or equipment operator experience, and a Commercial Driver's License were requirements. **Ex. 8, ¶ 19;  Ex. 50.; Ex. 6 ¶ 17.** Only the qualified applicants were interviewed. In *Bonomo,* the 8th Circuit found "an initial screening and preference for candidates with a master's degree" were objective components. *Bonomo* at 746. In this case, the City's NeoGov system and Human Resources Department used filters to determine which applicants met minimum qualifications based on objective criteria**.** In each instance, the City's Human Resources Department supplied the job description and posted the job posting. **Ex. 6 ¶ 17; Ex. 52, PP I-2, I-3.** In each instance, applicants meeting minimum qualifications, as determined by NeoGov and Human Resources were interviewed by a diverse panel that included two (2) African-American panelists and at least one (1) female panelist. **Ex. 8 ¶ 5, 12; Ex. 15 ¶ 8; Ex. 12 ¶ 9.** These are all safeguards used by the City to reduce the opportunity for any bias or animus to creep its way into hiring and promotional process.

It is not enough just to call into question an employer's hiring process as subjective, the plaintiff must also "provide sufficient evidence from which a reasonable factfinder could infer discrimination." *Cox v. First Nat. Bank,* 792 F.3d 936, 940 (8th Cir. 2015). Plaintiff attempts to

liken his case to *Catlett* and *McCullough* because each of those cases involved subjective promotional criteria. However, the subjective criteria in those cases was coupled with clear evidence of discrimination. In *Catlett* the hiring supervisors were all male, there was evidence that the interviewers attempted to intimidate the female candidates by pointing out the negative duties of the job and the duties the interviewers felt would keep females from wanting the job (no bathrooms on the job and having to deal with road-kill), there was evidence that the interviewers required the female candidates to interview in public view of the workforce with intent to intimidate, there were remarks made by interviewers showing clear signs of gender discrimination, and there was clear evidence in the record that the interviewers applied factors differently to female and male candidates. *See Catlett v. Missouri Highway and Transp. Com'n,* 589 F.Supp. 929 (W.D. Missouri 1983). This case comes nowhere near *Catlett,* as the plaintiff in this case can point to no evidence of discrimination in the April 29, 2019 promotion process. In *McCullough,* the promotion decision was made on the subjective opinion of one sole white male, and he selected a white applicant over a black applicant despite the black applicant having clear objective qualifications far superior to the white applicant. 140 F.3d 1123, 1128-1129 (8th Cir. 1998). The selected applicant in *McCullough* could only read and write on a sixth-grade level, and the plaintiff had a college degree and fifteen more months of experience. *Id.* This case comes nowhere near *McCullough.* Reginald Lockhart was not objectively more qualified than Dale Lester.

      The majority of plaintiff's argument is a disagreement with the lack of written criteria and that Defendants' interview process allows for the subjectivity of the panelists to factor into the hiring and promotion decisions. To support his argument, he cites to portions of the depositions of the defendants where he asks hypothetical questions and asks them to speculate as to what the interview panelists "might" do or "could" do. What the plaintiff ignores is the evidence regarding

what the panelists *did* do in this case. There is no reason to doubt the panelists' reason for selecting Dale Lester over the plaintiff, because Dale Lester does have significantly more total experience and supervisory experience than the plaintiff. Additionally, the essential functions of the job description are all related to the supervisory functions of the position. **Pl Ex. 6** It only makes logical sense for the focus of the panelists to be on finding the best and most qualified supervisor. The plaintiff fails to contradict the testimony and evidence of the actual panelists involved in the April 29, 2019 promotional process, and he does not present any evidence that the reason Dale Lester was selected over Plaintiff was due to Plaintiff's race. Plaintiff includes a chart that shows the demographics of each panelist and the demographics of each candidate. He claims that six (6) of the top seven (7) candidates in the rankings are white. However, this is simply false. Larry C. Adams is black. **Pl. Ex. 8, PP. 2, line 1.** Therefore, four (4) of the top seven (7) are white (Lester, Page, Ball, and Brown) and three (3) of the top seven (7) are black (Davis, Adams, Lockhart/Burress (tie)). The lowest scoring candidate is also white. Plaintiff nit-picks the rankings based on what he considers to be inconsistent results. However, Plaintiff fails to show how these alleged inconsistencies relate to race. Gordon Brown and Kevin Page are two of the candidates Plaintiff uses to point out alleged inconsistencies, and they are both white. Plaintiff only provides his subjective belief that the process is generally unfair but does not present any evidence that the alleged unfairness is race-specific. "Speculation and conjecture are insufficient to defeat summary judgment." *Gannon Intern., Ltd. v. Blocker,* 684 F.3d 785, 794 (8th Cir. 2012).

### II.  The use of general statistics does not raise an inference of discrimination nor does it establish a *prima facie* case for disparate impact.

As a threshold issue, disparate impact claims are not recognized under 42 U.S.C. § 1983, because disparate impact, by definition, does not involve intentional discrimination. *Foster v. Wyrick,* 823 F.2d 218, 220 – 221 (8th Cir. 1987). As established previously and admitted by

14

Plaintiff, his Title VII claims are time-barred. Therefore, Plaintiff relies only upon the Arkansas Civil Rights Act for his disparate impact claim.

Plaintiff's only proposed evidence of disparate impact is a simplistic percentage comparison of the total percentage of black and white employees in the Streets Division on the specific date of May 1, 2019 compared to the percentage of black and white supervisors during a five-year period between October 10, 2014 through October 10, 2019. The total sample size for the full five-year period is eighteen supervisors. Plaintiff goes on to cherry-pick the statistics even more by attempting to hold retirements and deaths of black supervisors against Defendants in the calculation. Plaintiff points out that after Harold Blackwell passed away, Darrell Romes retired, Herman Wiley retired, and Ivan Yarbrough retired, 91% of the supervisors in the Streets Division were white. Plaintiff argues that compared to the demographics of the Streets Division as a whole (70% black and 30% white), it is evidence that Defendant's promotional process has a discriminatory impact on black employees. Courts disagree.

### i. The plaintiff's statistical evidence fails to consider required factors

"Statistics based on applicant pool containing individuals lacking minimal qualifications for the job would be of little probative value." *Morgan v. United Parcel Serv. Of Am., Inc.,* 380 F.3d 459, 464 (8th Cir. 2004) (Citing *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 997 (1988). "[R]eliance on bottom line racial imbalance in the workforce is insufficient to establish that blacks are less likely to be promoted." *Id* at 464-465. "[T]he probative inquiry involves a comparison between the percentage of division managers who are black and the percentage of *qualified* (emphasis added) employees who are black in the population from which division managers are chosen." *Id.* It is undisputed in this case that the supervisory positions, such as Supervisor I, require one (1) year of experience in manual labor or equipment operation, one (1)

year of supervisory experience and a Commercial Driver's License (CDL). **Ex. 8, ¶ 19;  Ex. 50.** The laborer positions do not require a CDL. **Ex. 8, ¶ 19.** Plaintiff, despite having the burden to prove a prima facie case of discrimination based on disparate impact, declined to have a statistical analysis conducted of the relevant demographics of the Streets Division workforce. This failure is fatal, as the plaintiff's simplistic percentage comparisons and inclusion of unqualified employees in the comparison is insufficient to show an inference of racial discrimination. *Bennett v. Nucor Corp.,* 2007 WL 2333193 (E.D. Ark. 2007); *Mayor of City of Philadelphia v. Educational Equality League,* 415 U.S. 605. 620-621 (1974).

Additionally, plaintiff's statistical comparison includes all supervisors employed during the time period of October 10, 2014 through October 10, 2019 instead of focusing on supervisors who were promoted during the relevant time period. The 8th Circuit noted in *Eubanks v. Pickens-Bond Const. Co.* that a focus on the total number of black foremen was misplaced and that the focus should have been on the number of black foremen selected during the relevant time period. 635 F.2d 1341 (8th Cir. 1980). When considering the proper statistics, the evidence is undisputed that during the time period of October 10, 2014 through October 10, 2019, the Supervisor I position came open four (4) times and the position was filled by two (2) black employees (Darrell Romes in 2015 and Johnnie Dorn in 2017) and two (2) white employees (Kevin Page in 2019 and John Ball in 2019). **Ex. 4, ¶ 18; Ex 24; Pl. Ex. 8.** Notably, after Plaintiff's cherry-picked date of August 2019 in which there was one (1) black supervisor and ten (10) white supervisors, four (4) of the next five (5) Supervisor I hires were black employees. **Ex. 4, ¶ 16; Ex. 19; Ex. 21; Ex. 22; Ex. 23; Ex. 24.** One of the promoted black employees was the plaintiff.

### ii. The sample size is too small

"Statistical evidence derived from an extremely small universe . . . has little predictive value and must be disregarded." *Harper v. Trans World Airlines, Inc.,* 525 F.2d 409, 412 (8th Cir. 1975). Small sample sizes are notorious flaws of straight percentage comparisons. *Mayor of City of Philadelphia* at 620-621 (Finding a sample size of thirteen was not sufficient). Small sample sizes are unreliable, and the use of a "broad statistical base to determine whether a promotional procedure of an organization that has promoted twelve people over a period of five years . . .is questionable at best." *Royal v. Missouri Highway & Transp. Comm'n,* 655 F.2d 159, 163 (8th Cir. 1981). Such a small sample size makes the possibility of any perceived discrimination one "more of chance than as a result of a racially discriminatory promotion procedure." *Id.* Courts have found that when a sample size is so small such that the hiring of one additional member of the protected class would change the percentages by a significant amount, the sample size is not large enough. *Eubanks* at 1350 (the promotion of one less or one more black employee would result in over a fourteen percent change in the racial composition of the foreman group); *Mayor of City of Philadelphia* at 610-611 (change of one position in a thirteen-member panel would alter racial composition by eight percent). In this case, taking the plaintiff's sample size of eleven (11) supervisors in August of 2019, replacing one of the white supervisors with a black supervisor would have resulted in a change of nine percent. The sample size is too small and the plaintiff fails to make a prima facie case under a theory of disparate impact. For the same reasons, the plaintiff's purported statistical evidence is insufficient to show an inference of racial discrimination in his disparate treatment claim.

### iii.  Even if Plaintiff can make a *prima facie* case for disparate impact, he provides no evidence that an alternative method would result in less of a discriminatory impact

"If an employer met its burden by showing that its practice was job-related, the plaintiff was required to show a legitimate alternative that would have resulted in less discrimination." *Ricci v. DeStefano,* 557 U.S. 557, 558 (2009). Finding the best fit for a position is a legitimate business consideration to justify the use of subjective criteria. *Chambers* at 858. Thus, a focus on supervisory experience is related to the job and finding the person who best fits the duties and responsibilities of a supervisor. Plaintiff presents his opinion that a more objective approach would result in less of a discriminatory impact. However, he provides no statistical analysis or any evidence whatsoever to prove such an alleged result. In fact, objective criteria often result in a discriminatory impact, so much so that prior to the *Watson* case, objective criteria was the only criteria by which a plaintiff could allege a disparate impact claim. 487 U.S. 977, 989 – 990 (1988).

### III. The Plaintiff is not Entitled to Punitive Damages

Plaintiff seeks punitive damages in this matter for intentional discrimination. In *Kolstad v. American Dental Ass'n,* the Supreme Court clarified that "'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." 527 U.S. 526, 535 (1999). In other words, even if Plaintiff could show an inference of racial discrimination in this case, which he cannot, he must present evidence that the defendants in this case had knowledge the interview process they utilized violated federal law. No such evidence exists in the record. Plaintiff has presented no evidence of prior sustained complaints, prior successful litigation, or any other means by which the defendants would have knowledge that they could be potentially violating federal law.

The City also has safeguards to prevent discrimination in the workplace. They have a Labor & Relations Department to review allegations of discrimination. They ensure all interview panels include members of protected classes.

### V. CONCLUSION

As described in detail herein, each of the claims asserted by Reginald Lockhart fail as a matter of law. Based on exhibits, affidavits, and undisputed material facts, Defendants are entitled to Summary Judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff's complaint must be dismissed with prejudice on all counts.

Respectfully submitted,
Thomas M. Carpenter
City Attorney

/s/ Cody J. Pritchard
Cody J. Pritchard
Ark. Bar No. 2017157
Deputy City Attorney
500 West Markham, Suite 310
Little Rock, Arkansas 72201
(501) 371-4527
cpritchard@littlerock.gov