IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

REGINALD D. LOCKHART                                          PLAINTIFF

VS.                              CASE NO. 4:24-CV-143-JM

ERIC PETTY, Individually;
KENNETH WILCOX Individually; and
CITY OF LITTLE ROCK, a municipality                          DEFENDANTS

## ORDER

Pending is Defendants' motion for summary judgment on Plaintiff' Reginald Lockhart's

employment discrimination claims. (Doc. No. 19). In response to the motion for summary

judgment, Plaintiff conceded that his VII claims are time-barred. He also waived his claims for

retaliation and disparate pay by failing to respond to the defendants' motion on these claims. He

has elected to proceed on one claim—that the failure to promote him to a supervisor position in

April of 2019 was based on his race in violation of §1983 and the ACRA.

### Background Facts

In April 2019, Reginald Lockhart, a black male, had been an employee with the City of

Little Rock Streets Division for twelve years. He had been initially recruited to work for the

Public Works Department by Street Superintendent Kenneth Wilcox. In 2019, Plaintiff was the

leader of the crew whose focus was heavy equipment.[1] That month, Plaintiff's supervisor, Jim

Carloss, retired and the City posted to fill the position. Plaintiff applied. He had strong

expectations that he was next in line for the position based on several factors: a conversation he

had with Carloss to that effect, his understanding that the vacant position would be filled to

---

[1] The other crew focuses included concrete, asphalt, mowing/ditching, street sweeper, and catch basins.

supervise the heavy equipment crew, his years of experience with heavy equipment, and an excellent letter of recommendation from a city supervisor.

There are six supervisor positions in the Streets Division. Each has the same job title, duties, and responsibilities. While supervisors tend to be responsible for one crew primarily, they are each expected to be able to manage each crew. Supervisor job postings do not include a specific crew focus.[2] The city's human resources department prepares the job description and uses the NeoGov software system to screen all applicants for minimum qualifications. For any opening in the Streets Department, Superintendent Kenneth Wilcox recommends an interview panel to Operations Manager Eric Petty who, if he approves it, then submits it to the Director of the Public Works Department, John Honeywell, for approval. The panelists are then given the applications and the job description. Each panelist is allowed to ask their own questions. When all the interviews are concluded, the panelist individually rank each applicant from first choice to last. Each panelist's rankings are added together and the applicant with the best score is offered the position.

In this case, Wilcox put together an interview panel that consisted of himself (white male), Melissa Allen (black female), Calvin Johnson (white male), and Darrell Romes (black male). When the interviews concluded on April 29, 2019, Lockhart was tied for seventh place out of eleven candidates. The highest-ranking applicant was Dale Lester, a white male, who was offered the job.[3] At the time of his application, Lester had over thirty years of experience in the

---

[2] Plaintiff states in his declaration that it was "commonly known" that while the specific crew focus does not appear on the actual job posting, a vacant supervisor position would be filled to cover the same crew's focus. (Doc. No. 22-7, ¶ 7.) However, he does not offer evidence to support his theory of what is commonly known or to contradict Defendants' statements.

[3] Lester declined the position when Wilcox could not guarantee that he would be assigned to the heavy equipment crew. The position was then offered to and accepted by the second highest ranking applicant, Kevin Page, also a white male.

Streets Division, with nearly a decade as a supervisor at the same level as the open position and at least one year in superior supervisor position. While Plaintiff had some experience in field supervision as the leader of his crew; he had not held an official supervisor position.

Plaintiff takes the position he was more qualified for the position than Lester, and he was not offered the supervisor position because of his race. Plaintiff's primary challenge is to the City's interview process, which he argues is entirely subjective and lacking in structure making it highly susceptible to discriminatory hiring decisions. He also argues that Wilcox deliberately boxed him out of the promotion by moving Norman Stanley, a white male who was the supervisor over the concrete crew, to the position of supervising the heavy equipment crew that Plaintiff wanted in order to "nullify"[4] Plaintiff's heavy equipment experience. Plaintiff submits statistical evidence to argue that the City's hiring practices had a disproportionate racial impact which resulted in a disproportionately low number of black supervisors given the overall number of black employees in the Streets Divisions.

For the reasons stated below, the Court finds that Defendants are entitled to have their motion for summary judgment granted.

<u>Legal Standard</u>

Summary judgment is appropriate only when the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex* at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.

---

[4] Plaintiff's Response, p. 2. (Doc. No. 22).

*Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex* at 327.

Courts use the same legal standard to evaluate employment discrimination claims arising under § 1983 and the ACRA as they do for evaluating Title VII claims. *DePriest v. Milligan*, 823 F.3d 1179, 1185 (8th Cir. 2016). To avoid summary judgment on his failure to promote claims, Plaintiff must either offer direct evidence of discrimination, or he must establish a genuine dispute of material fact for trial under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). *Floyd-Gimon v. Univ. of Ark. for Med. Sci.*, 716 F.3d 1141, 1149 (8th Cir. 2013).

Direct evidence is "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004) (quotation and citation omitted). Direct evidence can be circumstantial, but it must carry strong causal proof. *Id.* The Court finds that Plaintiff has not submitted direct evidence of discrimination, and the analysis will proceed under the McDonnell Douglas framework.

To establish a prima facie case of race discrimination in a failure-to-promote claim, a plaintiff must show that: "(1) he is a member of a protected group; (2) he was qualified and applied for a promotion to an available position; (3) he was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead." *Jackson v. United Parcel*

*Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011) (quoting *Shannon v. Ford Motor Co.,* 72 F.3d 678, 682 (8th Cir.1996)). Lockhart has met each of these elements.

With this burden met, the burden of production shifts to the employer, who must rebut the presumption of discrimination with evidence "that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir. 1996) (quoting *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981). "This burden is not onerous." *Bone v. G4S Youth Servs., LLC,* 686 F.3d 948, 954 (8th Cir.2012). Defendant submitted the affidavits of three of the four panelists who interviewed for this position.[5] Melissa Allen stated that she ranked Lester higher than Plaintiff because Lester had more supervisory experience, including almost ten years as in a supervisor position, and his interview responses reflected "immense knowledge" of the operations of the Street Division. (Doc. No. 10-8, p. 3) Plaintiff's supervisory experience, on the other hand, was in field supervision, and she felt his responses to interview questions "showed a lack of experience in dealing with certain situations that supervisors are routinely expected to deal with." (*Id.)* Darrell Romes, who was himself a supervisor, gave similar reasons for ranking Lester higher than Plaintiff, noting that Lester had prior experience "in the exact [supervisor] role" compared to Plaintiff's "no experience" as a supervisor. (Doc. No. 10-15, p. 3). Wilcox also chose Lester over Plaintiff because of Lester's "vastly superior" supervisory experiences and skills compared to Plaintiff's field supervision experience. (Doc. No. 10-3, p. 4). This evidence is sufficient to rebut the presumption of discrimination created by the prima facie case.

In the final stage, the plaintiff has the burden to demonstrate that the proffered reason is pretextual for the true reason for the employment decision. *Burdine*, 450 U.S. at 253. The burden

---

[5] The fourth panelist, Calvin Johnson, is deceased.

remains with the plaintiff to "offer sufficient evidence for a reasonable trier of fact to infer discrimination." *Bonomo v. Boeing Co.*, 63 F.4th 736, 742 (8th Cir. 2023) (cleaned up). "It is not enough, in other words, to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993) (emphasis in original). A plaintiff can establish pretext by showing that the employer's reason for its action is not credible because it has "no basis in fact." *Smith v. Allen Health Sys., Inc.,* 302 F.3d 827, 834 (8th Cir.2002). Plaintiff can also meet this burden by "persuading the court that a [prohibited] reason more likely motivated the employer." *Burdine,* 450 U.S. at 256. Plaintiff makes several arguments intended to establish pretext.

Primarily Plaintiff focuses on the subjective nature of the interview process, which he places "[a]t the heart of this controversy. (Doc. 22, p. 4). "Although not illegal per se, subjective promotion procedures are to be closely scrutinized because of their susceptibility to discriminatory abuse." *Royal v. Missouri Highway & Transportation Comm'n,* 655 F.2d 159, 164 (8th Cir. 1981). Plaintiff challenges many aspects of the interview ranking process, including: the lack of written guidelines prepared questions for panelist, that panelist can "score applicants unfairly based on any whim," each panelist determines to what extent seniority is a factor, there is no uniformity among the panelist in their rankings, a panelist with racial bias could rank a black applicant lowest because of race with no recourse, there is no objective testing, not all applicants are asked the same questions, the questions are not asked in the same order for each applicant, and "there is no evidence that letters of recommendation from respected supervisor factor in." (Doc. No. 22, pp. 15-18).

Plaintiff likens the subjectivity in Defendants' interview process to that criticized by the courts in *McCullough v. Real Foods, Inc.*, 140 F.3d 1123 (8th Cir. 1998) and *Catlett v. Missouri*

*Highway & Transp. Comm'n*, 589 F. Supp. 929 (W.D. Mo. 1983). However, there are significant differences between this case and those, not the least of which are the additional factors those courts relied on to find an inference of discrimination reasonable.

In *McCullough*, the district court granted summary judgment to the employer who had promoted a white deli worker as deli manager over a black worker with more deli experience. [6] In reversing the decision, the Eighth Circuit found "critical" the "extremely subjective nature of the employer's stated promotion criteria, finding that "[the employer] did not set up formal criteria for this employment decision, but rather relied on subjective criteria such as his perception of each of the two employees' abilities, work ethic, and dedication to the job." *Id.* at 1125. However, the Court also found the employer had promoted a white woman whose "reading, writing, and mathematical skills were poor" over "the substantially better qualified black woman." *Id.* at 1129. It also noted the fact that the employer had once greeted a white employee while ignoring her. *Id.* at 1126. On these facts, the *McCullough* court found that the plaintiff had met her burden of establishing a reasonable inference of discrimination sufficient to overcome summary judgment.

In the *Catlett*, four female applicants for the maintenance positions filed a class action complaint challenging the gender discrimination present in the recruitment and hiring policies of the Missouri Highway and Transportation Commission. In his opinion following a bench trial, the district judge found that "the recommendations of the maintenance foremen, area supervisors and superintendents played a critical role in the hiring decisions;" there were no "effective written or verbal guidelines on hiring procedure," that the interviewers had "no objective criteria to delineate the factors relevant to the hiring decision" and no relevant information about the

---

[6] The opinion does not disclose the race of the employer.

necessary qualifications of the position. *Catlett* at 589 F. Supp. 945. Furthermore, all the interviewers were male, different hiring standards were applied to females than males, and interviewers discouraged female applicants by emphasizing only to them the negative aspects of the job. The court also listed several instances in which the decision to hire a male applicant over a female applicant with like qualifications for the position raised an inference of gender-based discrimination.

None of those additional factors are present in this case. In spite of his assertions, Plaintiff put forth no evidence that he was actually more qualified for the supervisor position than the candidates who were offered the position. While he believes he *would* have been more qualified had Norman Stanley not been moved to supervise the concrete crew, he has not created a reasonable inference that the move was done to block him because of his race. When Carloss retired, Wilcox asked the remaining five supervisors if any of them would like to move from their current crew and activities. Wilcox testified that offering this option to crew supervisors had been his practice since 2017 when it was suggested during a former supervisor's exit interview. In this instance, Stanley requested to change from supervising the concrete crew to being the supervisor over heavy equipment. His request was granted about the same time that the vacant supervisor position was posted.[7] Plaintiff has not offered evidence to rebut the testimony of Petty and Wilcox about why Stanley was allowed to move positions. His statement that it was "commonly known" that a supervisor position was filed with someone to supervise the recently vacated position is not supported by facts. Plaintiff points to no evidence to support his claim

---

[7] Plaintiff mischaracterizes Eric Petty's testimony when he states that "Petty admits that the situation [of allowing supervisors to move their activity focus to other crews] was not normal." (Doc. 22, p. 2). In fact, Pettys' testimony was that while it wasn't "normal, as in it happens every time that there is a vacancy," but "yes, that happens quite often." (Doc. 22-3, ln 1-9).

that Wilcox was motivated to block his bid for promotion, or that he in any way attempted to do so. At best he argues that it could have been done if Wilcox had wanted to.

Nor has Plaintiff shown that he would have been better qualified for the supervisor position than Lester even if the vacant position had been filled specifically to supervise the heavy equipment crew as he had expected. Lester had over twenty years of experience as an equipment operator in the Streets Division and ten years of experience as a supervisor. Plaintiff attempts to substitute "seniority" for "experience," and argues that because of Lester's several-year absence from employment with the Streets Division, Plaintiff had more seniority. This is unpersuasive as evidence of discrimination. (Doc. 18, p. 24.) Plaintiff also argues that the supervisor job description "stated that one year of lead worker experience is equal to one year of supervisory experience,"[8] which would mean that he had twelve years of supervisory experience when he applied. This is not accurate. The job description states that the "required knowledge, skills, and abilities" that make up the list of minimum qualifications for the position "are usually, although not always, acquired through completion of one (1) year of experience in manual labor or equipment operations related to street or drainage repair and maintenance and one (1) year of supervisory or lead work experience." (Doc. 22-6, p. 2). It does not equate the two for consideration beyond meeting the minimum qualifications.

Looking at the interview process challenged here, it was not wholly subjective as Plaintiff argues. The applicants were filtered by the NeoGov system and the City's human resources department to determine which candidates met the minimum qualifications. The Eighth Circuit has recognized that this NeoGov is an objective selection tool. *Pribyl v. Cnty. of Wright*, 964 F.3d 793, 796 (8th Cir. 2020) ("It is undisputed that the County set forth objective minimum

---

[8] Doc. 22, p. 1.

requirements in its NeoGov application and only the applicants who met those requirements were interviewed."). Also, unlike the situation in *Catlett* where only males interviewed the female candidates, the interview panel was diverse, with two black interviewers and two white. The two black interviewers, Allen and Romes, both testified that they had an opportunity to review the applications and the job description provided by human resources. They were each permitted to ask their own questions without oversight or influence from Wilcox. Both asked questions related to supervisory skills, and nobody tried to influence their ranking decisions. Allen ranked Plaintiff eighth, and Romes ranked him sixth. Plaintiff did not offer evidence of racial bias in any of the questions asked or the attitude of the panelists. His hypothetical questions about whether the panelists could rank a candidate lower for inappropriate reasons is not probative, as there is no evidence suggesting that they did. After close scrutiny, the Court finds no evidence of discriminatory abuse in the interview process challenged by Plaintiff.

Plaintiff also offers some statistical evidence to establish pretext. "[S]tatistics showing a general pattern of discrimination are probative on the question of whether the reasons given for a particular action are pretextual." *Catlett*, 589 F. Supp. 942. Plaintiff introduced evidence that as of May 2019, the racial makeup of the Streets Department employees was 69% black and 30% white, and that from October 2014 through October 2019 there were a total of five black supervisory employees compared to thirteen white supervisory employees.[9] "[T]he use of statistics 'is conditioned by the existence of proper supportive facts and the absence of variables which would undermine the reasonableness of the inference of discrimination which is drawn.' " *Coble v. Hot Springs Sch. Dist. No. 6*, 682 F.2d 721, 730 (8th Cir. 1982) (quoting *Eubanks v. Pickens-Bond Construction Co.*, 635 F.2d 1341, 1347 (8th Cir. 1981)). Plaintiff's statistics do

---

[9] Doc. 10-41, pp.109-116.

not demonstrate a pattern of discriminating against black employees for promotions to supervisory positions. Plaintiff does not offer evidence of which percentage of the black street department employees met the minimum qualifications for supervisory positions or offer evidence of how many black employees applied for promotions to supervisory positions during the referenced time period. "[S]tatistics based on an applicant pool containing individuals lacking minimal qualifications for the job would be of little probative value." *Morgan v. United Parcel Serv. of Am., Inc.*, 380 F.3d 459, 464 (8th Cir. 2004) (quoting *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 997 (1988)).

As further support for his pretext argument, Plaintiff points out that Page, the white male who ultimately filled the supervisor position Plaintiff applied for, had substantially more formal supervisory experience than Lester, yet he was ranked second overall after Lester. Plaintiff argues that this undermines Defendants' stated reason for its promotion decision, the candidate's supervisory experience. Viewed favorably to Plaintiff, this fact does not support an inference of racial discrimination. As the varied ranking of the panelists makes clear, other factors played a role in their rankings, such as their interview performance. Mellisa Allen, for example, ranked a third candidate, John Ball, higher than Lester or Page, stating that "he impressed me with his responses regarding how he would handle conflict and other scenarios, clearly indicating his knowledge and experience in dealing with such situations." (Doc. 10-8 ¶ 10).

Finally, as to Plaintiff's disparate impact claim, this claim cannot be asserted in § 1983 action, as that statute only provides remedies for intentional acts. *Foster v. Wyrick*, 823 F.2d 218, 222 (8th Cir. 1987). It does not appear that the Eighth Circuit or the Arkansas Supreme Court has

addressed whether a disparate impact claim can be brought under the ACRA.[10] Assuming without deciding that it can be, Plaintiff has failed to come forward with relevant statistical evidence, as discussed above, to establish that any particular practice was the cause of a disparate impact on a protected group. *See Bennett v. Nucor Corp.*, 656 F.3d 802, 817 (8th Cir. 2011) ("Because the plaintiffs rely on statistical evidence to show causation, that evidence must be of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." (cleaned up).

Conclusion

Plaintiff has not met his burden of offering sufficient evidence from which a reasonable trier of fact could infer that race was a motivating factor behind his failure to be promoted to the position of supervisor. Defendants' motion for summary judgment (Doc. No. 10) is GRANTED.

IT IS SO ordered this 12th day of March, 2026.

_____
UNITED STATES DISTRICT JUDGE

---

[10] *See Robinson v. Sears, Roebuck & Co.*, 111 F. Supp. 2d 1101, 1118 fn. 9 (E.D. Ark. 2000) ("Although the Court is not aware of any court to have specifically considered a claim of disparate impact under ACRA, such a claim would appear to fall within the scope of ACRA as the Act distinguishes between intentional employment discrimination and other "discriminatory practices" in employment for which "affirmative relief from the effects of the practices" is available. *See* Ark.Code Ann. § 16–123–107(c)(1)(A) and (2)(A). That being so, and because both the Arkansas Supreme Court and the Eighth Circuit Court of Appeals have applied Title VII analysis and law to ACRA claims this Court concludes that disparate impact claims as analyzed under Title VII may be so analyzed under ACRA as well.") (internal citations omitted).